# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2393

_____

United States of America,          *
                                   *

        Appellee,           *

                                   *   Appeal from the United States

      v.                   *   District Court for the
                                   *   Southern District of Iowa.

Jeffrey Allen Wallenfang,      *

                                   *

        Appellant.        *

_____

Submitted: February 10, 2009
Filed: June 9, 2009

_____

Before RILEY, SMITH, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Jeffrey Allen Wallenfang appeals his convictions and sentence for production of child pornography, in violation of 18 U.S.C. § 2251(a)(1); distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). He alleges that the district court[1] erred in (1) denying his motion for judgment of acquittal; (2) excluding his proffered expert testimony; (3) denying him acceptance of responsibility; and (4) imposing an unreasonable sentence of 320 months' imprisonment. We now affirm.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

## I. *Background*

In December 2005, Emily Arnold, an analyst in the child victim identification program for the National Center for Missing and Exploited Children (NCMEC), was monitoring a newsgroup on the Internet entitled "alt.binaries.younggirls.tights." Arnold, whose duties included identifying child pornography victims and proactively identifying potential child pornography activities on Internet websites, accessed this newsgroup and viewed images of prepubescent females wearing a variety of stockings or pantyhose that exposed their genitalia. Specifically, Arnold viewed images posted by an individual using the screen name "phluvr," which Arnold interpreted to mean "pantyhose lover." The images were of a prepubescent female with brown hair in various stages of dress wearing pantyhose or thigh-high stockings. Arnold subsequently found 40 other postings by phluvr on the newsgroup. The postings stated that the photographs were "homegrown," meaning that the person posting the messages was the photographer. Arnold monitored the newsgroup for several weeks until she found an Internet provider (IP) address in a posting that phluvr made. Arnold then tracked the IP address to an Internet service provider (ISP) in Indiana. Thereafter, Arnold forwarded all of the information that she had gathered to law enforcement personnel in Indiana.

As a result, Mitchell Kajzer, commander of the high tech crimes unit with the St. Joseph County Prosecutor's Office in Indiana, used his undercover computer to log onto the newsgroup and download all of the images that phluvr had posted. He identified a number of postings from phluvr indicating that phluvr was posting and trading child pornography images with other individuals through the newsgroup. He also identified several images that phluvr posted showing a child in tights or pantyhose with her vaginal area exposed. The images contained exchangeable image file data, which indicated that the photographs were taken with a Kodak DX 3900 zoom camera. Kajzer learned that phluvr was using Nibble Information Systems ("Nibble") located in Osceola, Indiana, as his ISP. Kajzer subpoenaed Nibble for account information for the date and times of the specific postings that phluvr made.

Nibble's records revealed that the account holder was Jeffrey Wallenfang of Ankeny, Iowa. Kajzer then forwarded the results of his investigation to law enforcement personnel in Iowa.

Shane Nestor, a special agent with the Bureau of Immigration and Customs Enforcement, sought and was granted a federal search warrant that was executed at Wallenfang's residence on January 6, 2006. Nestor seized numerous items from the residence, including a Kodak DX 3900 digital camera and a computer from Wallenfang's bedroom; various thigh-high stockings and pantyhose with receipts showing purchase dates of December 9 and 23, 2005, that were hidden in a sweatshirt in the bottom drawer of Wallenfang's dresser; a Christmas ornament seen in the background of many of the photographs from Wallenfang's nightstand; and a red dress worn by the child in several of the photographs found in the child's closet.

Nestor read Wallenfang his rights. Wallenfang waived his rights and agreed to an interview. When Wallenfang learned that the agents were there because of photographs that he had posted on the Internet, he replied, "I assume you are talking about the photographs of my daughter." Wallenfang's daughter was six years old at the time that he took the photographs. Wallenfang stated that he had a fetish for feet and pantyhose, that he had been taking photographs of his daughter for the last year, that he distributed the photographs by uploading them to a newsgroup on the Internet, and that he saved the photographs to the computer in his bedroom. Additionally, he stated that he purchased the pantyhose and thigh-high stockings for his daughter even though she did not normally wear these items. According to Wallenfang, he directed his daughter to wear certain outfits and posed her for the camera. He explained that he posted these photographs to the newsgroup because he enjoyed the feedback from other members, as this feedback made him feel good about himself. Wallenfang acknowledged that he acted immorally but believed he did not act illegally.

The grand jury returned a five-count superseding indictment against Wallenfang, charging him with (1) production of child pornography, in violation of 18 U.S.C. § 2251(a)(1) ("Count 1"); (2) distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) ("Count 2"); (3) receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) ("Count 3"); (4) possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) ("Count 4"); and (5) forfeiture, in violation of 18 U.S.C. § 2253 ("Count 5").

Prior to trial, Wallenfang notified the district court of his intention to call Dr. Craig Blaine Rypma, a mental health expert, to testify that he had evaluated Wallenfang and determined that Wallenfang was not a pedophile. Wallenfang argued such testimony "goes to the question of whether he's doing it for himself or someone else's view and their sexual urges or desires." The government moved to exclude Dr. Rypma's testimony. The district court reserved ruling on the government's motion in limine, stating:

> It seems to me that you can be guilty of these crimes without being a pedophile and without being attracted to these children sexually. You can do it for money, you can do it as a hobby, you can do it because you think it's art, even though you're wrong. There's all kinds of reasons that you might be doing it, but you still commit the crime.

> \*\*\*

> I have trouble seeing how Dr. Rypma's testimony is relevant to any material issue in the case unless the government has opened the door to requiring you to respond to that by trying to prove up some motive that the government doesn't have to prove.

> \*\*\*

> Well, government evidence that goes to proving that the defendant intentionally did the acts that constitute the crime I think are relevant, and I'm going to allow that; but to the extent that the government tries to

suggest that he committed the crime because he's a pedophile or because he's sexually attracted to children, it seems to me that that's unnecessary and probably irrelevant so that an objection would lie, and if that does not come in in the government's case in chief, however, I don't see the relevancy of Dr. Rypma's opinion.

\*\*\*

The law only requires that he knowingly possessed, produced, distributed, whatever, depending on which count we're talking about, material that he knows constitutes material that is lascivious in the sense that it portrays a child in sexually explicit conduct. Why he's doing that, it seems to me, is—unless your argument is quite the contrary that he's doing it because of some mental defect, but if your argument is he isn't doing it based upon some mental defect, then it seems to me that that's irrelevant.

I don't think I can rule on that motion in limine. I think I have to see what the government's case is before I can decide whether Dr. Rypma is going to testify. I think it's only fair, however, that I signal to you, Bob [Wallenfang's defense counsel], that I doubt at this point that I'm going to find that his testimony is going to be material so long as the testimony has been properly characterized by the government as to what the conclusion would be because I've not seen the reports; but if that is essentially the conclusion, I'm anticipating it's probably not coming in, but it could based upon what the government's case looks like.

At trial, 25 of the photographs recovered from Wallenfang's computer were admitted into evidence. After the government rested, Wallenfang made a motion for judgment of acquittal on all counts. The district court denied the motion, finding that

the record is clear that there is a submissible case on Counts 1, 2 and 4. I think it is a closer call with regard to Count 3, but because the law does allow the opinion of the inspector, and it also allows the jury to make its own determination, I believe that a submissible case has also been generated with regard to Count 3.

-5-

During Wallenfang's case-in-chief, he offered the testimony of Norm Stevens, a professional photographer, to define "focal point." Stevens opined that a focal point is the area where the photographer wants to direct the viewer's eyes. He testified that, in most photographs of people, the lower part of the legs and the feet are not shown. Stevens reviewed the 25 photographs admitted into evidence that Wallenfang took. According to Stevens, in his opinion, the focal point of these photographs was from the waist down to the feet. He observed that the feet were in every photograph. On cross examination, Stevens admitted that a child molester may have a completely different focal point when viewing a photo of a naked child than Stevens would. He further admitted that he did not know what the focal point of the pictures would be for a person sexually attracted to minor females.

Wallenfang also attempted to call Dr. Rypma to testify that, in his professional opinion, Wallenfang was not a pedophile and was not sexually attracted to young girls. The government objected to the testimony. Wallenfang proffered Dr. Rypma's testimony, and the court excluded it. In excluding the testimony, the district court stated:

> The fact is, of course, that you could violate this statute with any number of motives. They could be financial. They could be trying to harm someone. They could be any number of things, all of which may include pedophilia, but don't need to. And, accordingly, the motive behind the conduct that violates these statutes is not an element of the offense and when not raised by the government, it is simply not material to any issue that's before the court in this case.

After the defense rested, Wallenfang, out of the presence of the jury, renewed his motion for judgment of acquittal for the same reasons offered at the close of the government's evidence. The court denied the motion, stating, "The court finds nothing in the case that changes the court's mind with regard to the status of the evidence.

Considering the evidence in the light most favorable to the government, the court concludes that there is a jury question with regard to all four counts."

The jury ultimately convicted Wallenfang on Counts 1, 2, and 4 of the superseding indictment. He was acquitted on Count 3—receipt of child pornography.

Prior to sentencing, the United States Probation Office prepared a presentence investigation report (PSR) that calculated a base offense level of 32, with a four-level increase for the minor being under the age of 12, a two-level increase for distribution of the images via the Internet, and a two-level increase for being the parent of the minor involved in the offense, yielding an adjusted offense level of 40 and a criminal history category I. With an offense level of 40 and a criminal history category I, the PSR calculated Wallenfang's advisory Guidelines range as 292 to 365 months' imprisonment. The PSR did not give any reduction for acceptance of responsibility, noting that a reduction after trial is "not ordinarily recommended." Wallenfang objected to the denial of acceptance of responsibility, arguing that even though he put the government to its proof at trial, he was entitled to a two-level adjustment for acceptance of responsibility. Wallenfang believed that he adequately accepted responsibility because he acknowledged committing the alleged acts and only disputed whether those acts legally constituted the crime for which he was charged. Specifically, he argued that the photographs did not meet the definition of "sexually explicit conduct." The district court denied Wallenfang a two-level adjustment for acceptance of responsibility, finding that

> Mr. Wallenfang did challenge his factual guilt, and this is not one of those rare circumstances in which a defendant may proceed to trial without losing the benefit of acceptance of responsibility.
>
> Additionally, it is appropriate to also note that Mr. Wallenfang has consistently declined to accept responsibility for creating images of his child engaged in sexually explicit conduct. That was the essential

defense at trial, and but for a brief period of time when I concluded Mr. Wallenfang was not competent to make vital decisions in the case, that has been the view that he has expressed in hearing testimony. So credit for acceptance of responsibility is unavailable to Mr. Wallenfang.

Before announcing Wallenfang's sentence, the district court reviewed the factors set forth in 18 U.S.C. § 3553(a), stating:

While I clearly have considered the history and characteristics of the defendant, sadly for this type of offense, it is not at all uncommon for us to see a defendant with excellent education and an otherwise commendable career and no prior criminal offense. It is the nature of the offense that so many defendants appear before us in that regard.

What motivates the sentence in this case is that while I have considered all of the factors equally under Section 3553, some of those factors become so pronounced in the process of considering the case that I will focus on them.

The sentencing in this case is substantially driven by the nature and circumstances of the offense and the seriousness of the offense. This court must necessarily address the reality of the record. I have read letters that argue the defendant should not be sentenced more severely than state courts would address rape or molestation, but I must function within the bounds of federal law and the inherent policy of Congress and the Sentencing Commission to deal with this kind of abuse of children in a stern fashion, represented by the fact that under the most mitigated circumstances a sentence for this kind of conduct will be at least 15 years.

I have read the suggested mitigation that the photos did not include nudity, but indeed they do, and the defendant has consistently contended the photos are not of sexually explicit conduct, but indeed they are.

In considering adequate deterrence to criminal conduct, almost any sentence that the court would impose today will address that.

The need to protect the public from further crimes of this defendant will certainly be impacted by the term that he is in custody and the fact that he will be a much different individual when he comes out, but the court recognizes that this crime is difficult to fix.

The court does consider the kinds of sentences that are recommended by the advisory guideline range because that range is based upon a great deal of experience and history. It avoids disparity in sentencing, and it does take into consideration the policy of Congress.

The guidelines in this particular case have specifically and meaningfully addressed the most compelling circumstances of this particular case, the age of the child involved, the relationship of the child to the defendant and the distribution of the images on the Internet from which they cannot be reclaimed.

And the court does need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct. In that regard I do have trouble with this defendant's level of remorse. I do also have trouble with the fact that this case is markedly different from a case of an individual who has downloaded the images of strangers from the Internet, distributed them further and possessed them on his computer, but rather a profound breach of trust by a father to a child.

I conclude that the guideline sentencing system adequately addresses the circumstances of this defendant and that the guideline range is reasonable. Based upon all of the circumstances of this case, the court concludes that a sentence in the mid area of that range is entirely appropriate, is sufficient to address all of the appropriate sentencing considerations but not too much.

Thereafter, "[b]ased upon the court's review of the criteria set forth in Title 18, United States Code, Section 3553 and the unique circumstances of this case," the court sentenced Wallenfang to 320 months' imprisonment on Count 1, 240 months' imprisonment on Count 2 to be served concurrently to Count 1, and 120 months'

-9-

imprisonment on Count 4 to be served concurrently to Counts 1 and 2. He was also sentenced to ten years of supervised release and ordered to pay $6900 in restitution and a $300 special assessment.

## II. *Discussion*

On appeal, Wallenfang challenges his conviction and sentence. First, he asserts that the district court erred in denying his motion for judgment of acquittal because the photographs do not portray a lascivious exhibition of the genitals or pubic region. Second, he argues that the district court erred in excluding the testimony of Dr. Rypma who would have testified that, in his professional opinion, Wallenfang was not a pedophile and was not sexually attracted to young girls. Third, he contends that the district court erred at sentencing in denying him a two-level adjustment for acceptance of responsibility. Finally, he argues that his sentence is unreasonable.

## A. *Motion for Judgment of Acquittal*

Wallenfang contends that insufficient evidence exists to prove that the photographs at issue constitute "lascivious exhibition of the genitals or pubic area." According to Wallenfang, the photographs were not depictions of the genitals or pubic area *or* a lascivious exhibition of them. As a result, he asserts that, as a matter of law, the photographs cannot be found to depict "sexually explicit conduct."

In response, the government maintains that the district court correctly denied the motion for judgment of acquittal because the photographs in question clearly depict sexually explicit conduct.

"We review the denial of a motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the verdict." *United States v. Hawkins*, 548 F.3d 1143, 1148 (8th Cir. 2008). We will reverse "only if no reasonable jury could have found the accused guilty." *United States v. Flying By,* 511 F.3d 773, 776 (8th Cir. 2007).

-10-

"Sexually explicit conduct" in the context of child pornography includes "'lascivious exhibition of the genitals or pubic area of any person.'" *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999) (quoting 18 U.S.C. § 2256(2)(E)).[2] "The

---

[2]Section 2251(a) of 18 U.S.C., "Sexual Exploitation of Children," provides:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

Likewise, 18 U.S.C. § 2252(a)(2) states that any person who

knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

-11-

meaning of the phrase 'lascivious exhibition of the genitals or pubic area' is a matter of law which we review *de novo*." *Id*. But "the question whether materials depict 'lascivious exhibition of the genitals,' an element of the crime, is for the finder of fact." *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001). "Nudity alone does not fit this description; there must be an 'exhibition' of the genital area and this exhibition must be 'lascivious.'" *Horn*, 187 F.3d at 789; *see also United States v. Kemmerling*, 285 F.3d 644, 645–46 (8th Cir. 2002) ("We have held that more than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the statute."). "A picture is 'lascivious' only if it is sexual in nature." *Kemmerling*, 285 F.3d at 646.

---

(B) such visual depiction is of such conduct . . .

shall be punished as provided in subsection (b) of this section.

Finally, 18 U.S.C. § 2252(a)(4)(B) provides that any person who

knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—

(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii) such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

"In attempting to determine the limits of this category of sexually explicit conduct, we find helpful the six criteria suggested in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *cert. denied*, 484 U.S. 856, 98 L. Ed. 2d 118, 108 S. Ct. 164 (1987)." *Horn*, 187 F.3d at 789. We have found that "when the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer, the depiction is lascivious." *Id.* (citing *Dost*, 636 F. Supp. at 832). The other criteria outlined in *Dost* include "a sexually suggestive setting, inappropriate attire or an unnatural pose for a child, and a suggestion of sexual coyness or willingness to engage in sexual behavior." *Id.*

"[A]ll six [*Dost*] factors need not be present in order to bring the depiction under the proscription of the statute." *United States v. Wolf*, 890 F.2d 241, 245 (10th Cir. 1989) (citing *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) ("A visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.' The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor.") (internal quotations and citation omitted)); *see also United States v. Moore*, 215 F.3d 681 (7th Cir. 2000) (finding that, under Illinois law defining child pornography, a visual depiction need not involve all the *Dost* factors to be considered lewd, and the court must consider the overall content of the depiction, taking into account the age of the minor); *United States v. Rubio*, 834 F.2d 442, 448 (5th Cir. 1987) ("Of course, a visual depiction need not involve all of these factors to be a lascivious exhibition of the genitals or pubic area. The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor."). Furthermore, the *Dost* factors are not exhaustive, as "other factors may be relevant, depending upon the particular circumstances involved." *United States v. Amirault*, 173 F.3d 28, 31 (1st Cir. 1999). Thus, the "inquiry will always be case-specific." *Id*. at 32.

We have previously determined that "the relevant factual inquiry . . . is not whether the pictures in issue appealed, or were intended to appeal, to [the defendant's] sexual interests but whether, on their face, they appear to be of a sexual character." *Kemmerling*, 285 F.3d at 646. If they are not of a sexual character, then they are not illegal under the statute "because they are not lascivious." *Id*. "In other words, it is the duty of the trier of fact in this kind of case to examine the pictures to determine whether they are designed to appeal to the sexual appetite, as, for instance, by exhibiting a sexual coyness or focusing on the pubic area of the subject in a way that is lewd or lurid." *Id*.

In *Kemmerling*, the defendant took photographs depicting the genitalia of a male child who resided in the same trailer park as the defendant. *Id*. at 645. A videotape recorded by the defendant depicted the genitalia of another male child who also resided in the trailer park. *Id*. Other images showed children "in varying stages of dress." *Id*. On appeal, the defendant challenged the district court's finding, after a bench trial, that some of the photographs and images were "child pornography." *Id*. Specifically, the defendant argued that the images "d[id] not depict a location or pose suggestive of sexual activity," "fail[ed] to suggest sexual coyness or willingness to engage in sexual activity," and did not "appear to be intended to create a sexual response in the viewer." *Id*. We disagreed, stating:

> While some of the images in the present case may not depict a location or pose suggestive of sexual activity and may not suggest sexual coyness or willingness to engage in sexual activity, it was not clearly erroneous to conclude that some do. A factfinder could decide, moreover, without being clearly wrong, that the other pictures are lascivious because they are of children who are nude or partially clothed, the focus of the images is the child's genitals or pubic area, and their purpose appears to be to elicit a sexual response from the viewer. These images were not designed, for instance, simply to provide a clinical view of the portions of the children's anatomy that are pictured.

*Id.*

Having reviewed all of the 25 exhibits, and applying the *Dost* factors, we hold that the district court did not err in denying Wallenfang's motion for judgment of acquittal, as a reasonable jury could have concluded that at least one of the 25 photographs depicted "lascivious exhibition of the genitals or pubic area." While several of the photographs satisfy multiple *Dost* factors, only one photograph need meet the definition of "lascivious exhibition of the genitals or pubic area" to support the jury's verdict, as Wallenfang's counsel conceded at oral argument. Therefore, we limit our analysis to exhibit 3-12, which the government identified at oral argument as depicting essentially all of the *Dost* factors.

First, as to the focal point of the photographs, a reasonable jury could conclude, as in *Kemmerling*, that the focal point of exhibit 3-12 is on the child's genitals or pubic region. Exhibit 3-12 shows the child sitting on the floor wearing a green dress and sheer pantyhose. One leg is raised, and her pubic area is *clearly* visible through the pantyhose. This is not an instance where the defendant was merely "taking pictures of a non-pubic area such as the buttocks." *United States v. Gleich*, 397 F.3d 608, 614 (8th Cir. 2005) (holding that the district court "incorrectly found an incident involving the defendant taking a 'mooning' picture of the minor and transmitting it over the Internet constituted a second instance of sexual abuse or exploitation" because the picture "did not constitute an instance of sexual exploitation because taking pictures of a non-pubic area such as the buttocks does not meet the definition of 'sexually explicit conduct'"). Nor were the photographs at issue designed "to provide a clinical view" of the child's anatomy. *See Kemmerling*, 285 F.3d at 645.

Second, a reasonable jury could find that exhibit 3-12 is sexually suggestive and suggests sexual coyness or willingness to engage in sexual activity. In exhibit 3-12, the child has her mouth formed in the shape of an "O." *See Wolf*, 890 F.2d at 241 (rejecting defendant's argument that the photograph was not within the contemplation

-15-

of the statute because the sleeping child was not excluding sexual suggestiveness where the photograph depicted the child, inter alia, lying on her back with her head turned slightly to the right and her mouth open). Additionally, the child's dress is raised up to reveal her pubic area.

Third, as to whether the child is depicted in inappropriate attire or an unnatural pose for a child, exhibit 3-12 shows the child wearing sheer pantyhose. She is sitting on the floor with her dress raised up and one of her legs is raised, exposing her genitalia through the sheer pantyhose. *Cf. Villard*, 885 F.2d at 124 (explaining that"a photograph of a naked girl might not be lascivious (depending on the balance of the remaining *Dost* factors), but a photograph of a girl in a highly sexual pose *dressed in hose*, garters, and a bra could certainly be found to be lascivious") (emphasis added).

Fourth, with regard to whether the child is nude or partially clothed, the child is partially clothed in several of the photographs. Specifically, in exhibit 3-12, the child's genitalia is exposed through the sheer pantyhose and is plainly visible to the viewer. "[I]t is not true that by scantily and barely covering the genitals of young girls that the display of the young girls in seductive poses destroys the value of the poses to the viewer of child pornography." *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994). While the child's genitals are covered by the sheer pantyhose, "the display and focus on the young girl['s] genitals or pubic area apparently still provides considerable interest and excitement for the pedophile observer, or else there would not be a market for the [photographs] in question in this case. Thus, the scantily clad genitals or pubic area of [a] young girl[] can be 'exhibited' in the ordinary sense of that word . . . ." *Id.*

Fifth, as to whether the image is intended to elicit a sexual response in the viewer, the government points out that Wallenfang posted the pictures in a newsgroup entitled "alt.binaries.pictures.younggirls.tights." The newsgroup was known to be used by people interested in viewing and trading child pornography. Knowing that Wallenfang intentionally posted these pictures to the newsgroup, the jury could

-16-

reasonably believe that Wallenfang wanted to create a sexual response in the newsgroup's viewers. He posted messages to the newsgroup, informing the viewers that he had many more pictures to post. Additionally, he stated that he would be willing to produce different types of photographs if others would like them. Given the sexual nature of the photographs, he thus intimated a willingness to cater to others' sexual imagery preferences.

Sixth, as to whether the picture portrays the minor as a sexual object, by uploading the pictures of the child to the newsgroup, a jury could reasonably find that Wallenfang portrayed the child as a sexual object for the viewers.[3] *See Arvin*, 900 F.2d at 1391 (stating that one of the factors to consider is "whether the picture portrays the child as a sexual object"). The photographs unquestionably go far beyond any playful snapshots a parent might take of a minor child in a candid moment and are primarily sexual in subject rather than secondarily so because of the repeated pattern of inclusion of genitalia. Placing erotic photographs of a young child on a website primarily devoted to sexual images gives a jury sufficient evidence to conclude that the child was portrayed as a sexual object.

## B. *Dr. Rypma's Testimony*

Having concluded that the district court did not err in denying Wallenfang's motion for judgment of acquittal, we now turn to the question of whether the district court erred in excluding the testimony of Dr. Rypma who would have testified that, in his professional opinion, Wallenfang was not a pedophile and was not sexually attracted to young girls. According to Wallenfang, the district court should have permitted the jury to consider his motive for taking the photographs because it was a material issue. Wallenfang asserts that this error was compounded when the

---

[3]The government concedes that the captions that appear on the pictures do not contain terms commonly associated with child pornography. *See United States v. Arvin*, 900 F.2d 1385, 1391 n.4 (9th Cir. 1990) (stating that one of the factors to consider is the captions that appear on the pictures).

government "opened the door to the idea of someone being sexually attracted to young girls" in its cross examination of Stevens.

In response, the government asserts that the district court correctly excluded Dr. Rypma's proffered testimony because the issue of pedophilia was not relevant to any of the offenses charged in the superseding indictment.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. But the district court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Here, we concur in the district court's well-reasoned and thorough analysis excluding Dr. Rypma's testimony. The issue of Wallenfang's "motive" in producing, distributing, and possessing the photographs at issue is immaterial and irrelevant. Instead, "the relevant factual inquiry in this case is not whether the pictures in issue appealed, or were intended to appeal, to [Wallenfang's] sexual interests but whether, on their face, they appear to be of a sexual character." *Kemmerling*, 285 F.3d at 646.

Moreover, Wallenfang argues that the government "opened the door" when it cross-examined Stevens and inquired into whether a child molester might have a different focal point when viewing a photograph of a naked child than Stevens would. But Wallenfang did not object to this line of questioning. In fact, the government's questions countered Stevens's testimony that the focal point of the photographs was the legs and feet of the child. Such questioning was appropriate because, as noted

-18-

*supra*, the relevant inquiry was not whether the photographs appealed to Wallenfang's sexual interests but whether they were of a sexual nature.

## C. *Acceptance of Responsibility*

Wallenfang's third argument is that the district court erred in denying him a two-level adjustment for acceptance of responsibility because his purpose in going to trial was to challenge whether the images met the legal definition of "sexually explicit conduct," i.e., he was challenging the applicability of the statutes to his conduct. Wallenfang asserts that the district court should have looked at his pretrial admissions, made upon his arrest, that he took the photographs of his daughter; that he posted some of the photographs on the Internet; that he possessed the photographs; that the images in the photographs were of a child; and that his conduct was morally wrong.

In response, the government argues that the district court correctly denied Wallenfang an acceptance-of-responsibility adjustment because Wallenfang challenged his *factual* guilt at trial.

> Under USSG § 3E1.1(a), the burden is on a defendant to show that he "clearly demonstrate[d]" acceptance of responsibility. *See United States v. Thomas*, 93 F.3d 479, 489 (8th Cir. 1996). A district court's factual determination about whether the defendant accepted responsibility is entitled to great deference, and we will reverse it only if it is so clearly erroneous as to be without foundation. *United States v. Little Hawk*, 449 F.3d 837, 839 (8th Cir. 2006).
>
> In certain "rare situations," a defendant may clearly demonstrate acceptance of responsibility despite his decision to go to trial. USSG § 3E1.1, comment. (n.2). "This may occur, for example, where a defendant goes to trial to assert or preserve issues that do not relate to factual guilt (*e.g., to make . . . a challenge to the applicability of a statute to his conduct*)." *Id.* In such instances, a court should look primarily to a defendant's pre-trial statements and conduct to determine if he has accepted responsibility, *id.*, and the timeliness of a defendant's

acceptance of responsibility is a relevant factor under 3E1.1(a). *Id.*, comment. (nn.1(h), 6). Of course, even a defendant who pleads guilty is not entitled to the downward adjustment as a matter of right, *id.*, comment. (n.3), so neither is a defendant who goes to trial to preserve issues that do not relate to factual guilt.

*United States v. Spurlock*, 495 F.3d 1011, 1014–15 (8th Cir. 2007) (emphasis added).

We conclude that the district court's factual determination that Wallenfang was not entitled to a two-level adjustment for acceptance of responsibility was not clearly erroneous. We, like the district court, find that Wallenfang was challenging his *factual* guilt—not the legal applicability of the statutes—because, as we stated in *Rayl*, "the question whether materials depict 'lascivious exhibition of the genitals,' *an element of the crime*, is for the finder of fact." 270 F.3d at 714 (emphasis added); *see also United States v. Ragsdale*, 426 F.3d 765, 782–83 (5th Cir. 2005) (holding that defendants who went to trial on charges of mailing obscene materials and conspiracy were not entitled to acceptance-of-responsibility reduction on theory that they admitted to conduct in question and contested only whether subject materials were obscene; although definition of obscenity was legal conclusion, going to trial constituted challenge to factual guilt because whether materials in question qualified as obscene, as applied to facts of case, was issue of fact for jury).

## D. *Reasonableness of Sentence*

Wallenfang's final argument is that his sentence is unreasonable because all of the § 3553(a) factors warrant a lower sentence than 320 months' imprisonment. He points out that he has no criminal history, no arrests, and no juvenile record. Moreover, he notes that he presents a low risk of recidivism, has a steady and impressive work history, immediately cooperated with the government upon his arrest, and never molested any of his children. Finally, he contends that his sentence will result in a sentencing disparity when compared with similar, or arguably worse, crimes as sentenced in this circuit.

In response, the government stresses that Wallenfang's sentence fell within the advisory Guidelines range of 292 to 360 months' imprisonment, meaning that the sentence carries a presumption of reasonableness. Additionally, the government notes that the district court fully articulated its analysis of the § 3553(a) factors.

Upon review, we hold that Wallenfang's sentence of 320 months' imprisonment is not unreasonable. First, a district court's imposition of a sentence within the advisory Guidelines range is presumptively reasonable. *United States v. Aleman*, 548 F.3d 1158, 1164 (8th Cir. 2008). Second, the district court imposed Wallenfang's sentence "after a thorough discussion of the § 3553(a) factors." *Id.* Wallenfang's argument is not persuasive. He has not shown that the court considered an erroneous factor or placed too much emphasis on a proper factor. Therefore, we hold that the district court did not abuse its discretion in sentencing Wallenfang to 320 months' imprisonment on Count 1, 240 months' imprisonment on Count 2 to be served concurrently to Count 1, and 120 months' imprisonment on Count 4 to be served concurrently to Counts 1 and 2.

## III. *Conclusion*

Accordingly, we affirm the judgment and sentence of the district court.

_____