RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MATTHEW MERCER-KINSER,

*Defendant-Appellant*.

No. 24-1227

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cr-20772-1—Terrence George Berg, District Judge.

Decided and Filed: August 13, 2025

Before: STRANCH, BUSH, and NALBANDIAN, Circuit Judges

───────────────

## COUNSEL

**ON BRIEF:** David W. Camp, CAMP & CAMP, PLLC, Jackson, Tennessee, for Appellant. Erin S. Shaw, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge.  A jury found Matthew Mercer-Kinser guilty of his second child pornography crime.  On appeal, he claims insufficient evidence supported his conviction, that the district court admitted unfairly prejudicial evidence, and that the child pornography statute is unconstitutionally overbroad, both facially and as applied to him.  We reject each argument, so we AFFIRM his conviction for the knowing receipt of child pornography.

**I.**

In 2009, a jury convicted Mercer-Kinser of the transportation of child pornography and the district court sentenced him to 151 months in federal prison.  Ten years into his sentence he was released into a halfway house.  Mercer-Kinser has two kids:  an older son, who was about two and a half at the time of his first conviction and whom Mercer-Kinser molested at that time, and a daughter, who, by 2019, was a young preteen with access to a cellphone.

At the halfway house, Mercer-Kinser spent time texting his daughter in mostly one-sided conversations.  He asked her if she knew what he'd gone to prison for and repeatedly asked her if she thought what he did was ok.  He asked if it bothered her to talk about sex with him, even though she "knew about [his] orientation."  R.89, Trial Exs., PageID 1560.  He asked if she thought there was anything "wrong with watching pictures and videos of kids doing sex stuff."  *Id.* at PageID 1561.  Then, asking more specifically about adults participating, he questioned whether those adults would've done "anything wrong" if "no one [wa]s getting hurt."  *Id.* at PageID 1564.  He also insisted that their conversations were "super top secret" for "jus[t] you and me," and so she should "erase the conversation" so "nobody c[ould] read it."  *Id.* at PageID 1565.

Despite Mercer-Kinser's suggestion that his daughter delete her texts, his ex-sister-in-law (his daughter's aunt) had access to the messages as the owner of the cell-phone plan.  Knowing why Mercer-Kinser had originally gone to prison, she was concerned enough to forward the texts to the FBI.

The FBI got a search warrant for Mercer-Kinser's phone.  But before the halfway house could confiscate the device, he managed to delete most of the phone's contents.  These events led him to spiral and Mercer-Kinser ran into oncoming traffic on the interstate where he was hit by a tractor trailer.  He sustained non-life-threatening injuries in this apparent suicide attempt.

As Mercer-Kinser recovered, the government kept investigating.  And despite his attempts to scrub the phone, investigators found incriminating evidence.  For example, he regularly texted one friend, Nate, with whom he was particularly honest:

Nate: Does cp[1] have antidepressant qualities?

Mercer-Kinser: I think so. It makes ME happy anyway. . . . It's like the methadone to the heroine [sic] of getting your dick sucked by a 13 yo while watching.

*Id.* at PageID 1567. To another friend, describing his evening plans, he said: "I'm gonna be watching porn, and surfing Twitter looking at sexy pictures of little girls, and masturbating." *Id.* at PageID 1569; R.85, Trial Tr., PageID 1185.

The government also found deleted web bookmarks to online forums on his phone. A few websites that had been saved were titled "R-g-i-f" (Raping Girls is Fun) and "jbpill" (Jailbait pill). R.85, Trial Tr., PageID 1188–89.

But it isn't a federal crime to talk about offensive topics. Instead, it was the 163 images sexualizing children on his phone that led the government to indict him for the receipt and possession of child pornography. 18 U.S.C. § 2252A.

Before trial, Mercer-Kinser moved to exclude 160 of the 163 images. He claimed they were "child erotica" and merely showed minors in suggestive clothing, "akin to a child in a beauty contest." R.28, Mot. in Limine, PageID 112. So they failed as a matter of law to meet the federal definition of child pornography. He also argued that the court should exclude them as irrelevant because whether he possessed child erotica wasn't probative of whether he had possessed child pornography. The district court disagreed, finding that the child erotica was probative of his knowledge and intent. Still, the court asked the government to confer with Mercer-Kinser and clarify exactly which images would be admitted at trial. Of the images it sought to admit, the government promised to categorize the images as either child erotica or child pornography, and admit them in those distinct groups to avoid juror confusion. Ultimately, the court admitted seven images that the government alleged met the statutory definition of child pornography.

Mercer-Kinser also moved to exclude any discussion of the bookmarks. He claimed that the forums were "by their very nature," free speech. *Id.* at PageID 113. And the government had

---

[1]The FBI explained at trial "cp" refers to child pornography.

no evidence beyond the fact that he had the forums bookmarked on his phone, so the government couldn't prove he had ever viewed the pages. R.80, Pretrial Hr'g, PageID 765–68. The district court partially agreed, limiting how the government could rely on the bookmarks. Because there was no evidence "confirming that the content viewed by the investigator was the same content Mr. Mercer-Kinser would have seen whenever he accessed these forums," the content of the webpages wasn't relevant. R.32, Order Den. Mot. in Limine, PageID 141. But if the government wanted to discuss the names of the websites because they "evince an interest in children for a sexual reason," they were admissible to show knowledge and intent. *Id.* at PageID 141–42.

About eighteen months after the court denied his motions in limine, Mercer-Kinser moved to dismiss his entire indictment. He argued that 18 U.S.C. § 2252A violates the First Amendment both facially and as applied to him. The district court disagreed for many reasons, for example, because the motion was years too late. But on the merits, the court concluded that Mercer-Kinser's theories were foreclosed by precedent.

So Mercer-Kinser went to trial. FBI Agent Raymond Nichols was the government's main witness and walked the jury through the entire investigation. He began by discussing Mercer-Kinser's phone, how it stored data, and what evidence the investigation had uncovered from it.

The phone was a rudimentary flip phone, so its screen was small—two inches by about one and a half inches. The phone was also in rough shape; the camera had been "destroyed or punched out with some kind of sharp tool." R.85, Trial Tr., PageID 1166. But it was still a smartphone because it could both connect to the internet and had access to applications. There was also evidence that the phone had connected to over 25 Wi-Fi networks.

Agent Nichols then testified about the content that investigators had discovered on the phone. He started with the texts between Mercer-Kinser and Nate, and Mercer-Kinser's discussions with other friends about surfing Twitter for pictures of little girls. And hewing to the district court's pretrial order, Agent Nichols discussed the bookmarks that had been found on the phone but only to introduce their titles.

Though the government had found 163 images on Mercer-Kinser's phone that sexualized children, the government admitted only seven to the jury as examples of child pornography.[2] Agent Nichols described the content of each image before they were shown to the jury. Exhibit 1 showed a young female from her chest up. Though she had a shirt on, she had an erect penis in her mouth. Exhibit 2 showed two young females touching the same erect penis with their tongues. Exhibit 3 depicted a female between her bellybutton and her thighs. Her diaper was pulled down so that the camera captured her vagina. Exhibit 4 similarly showed a female between her bellybutton and thighs. A diaper was pulled to the side with her hand near her exposed vagina. Exhibit 5 showed a young female naked except for her underwear or bathing suit bottom. The photo was angled up from beneath her, so the image focused on her vagina. Exhibit 7 showed a young female with a penis in the bottom right-hand corner of the image beside her face. Across the image, text read: "blow jobs. Your wife won't, daughter will."

Exhibit 6 merited additional testimony. When a child pornography investigation unfolds, the FBI works with the National Center for Missing and Exploited Children (NCMEC) to determine whether any of the suspect's images match with known images of child pornography. NCMEC will give each series a name based on some notable feature in it—for example, if a series involves two brothers, the series might be known as "two brothers." *Id.* at PageID 1162. If an investigation flags an image from a known series, the victims (whose names are kept confidential) are notified.

During Mercer-Kinser's investigation, Agent Nichols submitted the seven images to NCMEC to compare against their database. NCMEC flagged Exhibit 6 as part of the "sweet white sugar" series. It depicts "Pia," a very young girl. The photo was taken from below, so her vagina is the central focus of the image. Her pink clothing was pulled to the side to expose her vagina. Pia's mother testified that as the Mercer-Kinser investigation unfolded, NCMEC notified her that an image of her child had been implicated in the case. The photos originated in Canada when Pia was between three and five years old and had been shared worldwide since.

---

[2]In line with the decision from the pretrial conference, the government separately admitted other images from Mercer-Kinser's phone, as "child erotica." The government explained the difference to the jury during opening arguments, and elicited testimony from Agent Nichols about the distinction too.

Since the camera on Mercer-Kinser's phone had been destroyed, the government explained how these images could have ended up there. One way the phone stored images was through its "DCIM" or "digital camera image." Any photo that ends up in the phone's DCIM requires some "affirmative step" by the user to save it into the phone's gallery. *Id.* at PageID 1191. That means someone either texts it to the phone and the user saves that image, or the user takes a screenshot of the photo on a website and the phone saves it. In either case, "the user at the very minimum saw that picture" because it requires an "intentional[]" act. *Id.* at PageID 1191, 1203. All seven images were found in the phone's gallery, so were in the phone's DCIM.

The government also offered other evidence, like Mercer-Kinser's prior conviction for the transportation of child pornography in 2009, and his attempted suicide as evidence of the consciousness of his guilt. The jury also heard from Shannon Adams—Mercer-Kinser's ex-sister-in-law—who testified about the messages between Mercer-Kinser and his daughter that had prompted the investigation. Adams discussed how she had discovered the messages and explained why she sent them to the FBI.

At the close of the government's case, Mercer-Kinser moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. He argued that there was insufficient evidence "to prove that he knowingly viewed child pornography." R.86, Trial Tr., PageID 1352. In response, the government outlined the wealth of evidence supporting each element of the charged crimes. *Id.* (reciting all the elements of the crime); *id.* at 1352–53 (explaining the evidence that supported the "knowingly received" element); *id.* at 1353–54 (explaining the evidence that supported his knowledge that the photos were child pornography); *id.* at 1354 (explaining the evidence that supported the interstate or foreign commerce element). The district court denied the motion. *Id.* at 1355; *see also id.* at 1355–56 (agreeing that there was sufficient evidence about the mens rea); *id.* at 1356 (agreeing that there was evidence to prove that the images received were child pornography); *id.* (agreeing that there was evidence to support the interstate commerce element).

Mercer-Kinser then testified in his own defense. He started by describing life in the halfway house where he slept in a bunk room with seventeen other men. Not everyone could afford a phone, plus he had good service in the house, so his roommates would often ask to borrow his. For this reason, he regularly gave out his password. He also regularly left his phone

unattended, like when he'd shower, eat, or attend class. All said, the crux of his defense was that someone else at the house had downloaded the child pornography.

He also maintained his pretrial theory that he had no interest in child pornography, only child erotica. He explained to the jury that if child pornography had been on his phone, its presence was inadvertent—he never intended to view it. As proof, he explained his go-to searches for finding erotica: "Disney actresses," "young ballerinas," "young girls in bathing suits," and "young girls in bikinis." *Id.* at 1380. These keywords helped him find the specific content he wanted. Still, he reiterated—twice—that he had a sexual interest in children.

Disbelieving his version of events, the jury convicted him of the receipt of child pornography. And through a special verdict, the jury found that the seven images alleged to be child pornography, were, in fact, child pornography. Mercer-Kinser was sentenced to 188 months' imprisonment followed by a lifetime of supervised release, and he must register as a sex offender. He timely appealed.

**II.**

Mercer-Kinser raises three challenges to his trial and conviction. First, he claims that there was insufficient evidence to support the jury verdict. Second, he argues that the district court erroneously admitted the text messages between him and his daughter. Finally, he maintains that the district court erroneously denied his motion to dismiss his indictment on First Amendment grounds.

**A.**

As to the sufficiency of the evidence, he argues that the district court should have exercised its power as the "thirteenth juror" to exclude the images from trial because, as a matter of law, they don't satisfy the statutory definition of child pornography. Appellant Br. at 13. He also claims the district court should have excluded any reference to the bookmarks saved on his phone. We disagree as to both. Sufficient evidence supported his conviction.

**1.**

Of the 163 images the government found on his phone, only seven were admitted at trial as alleged child pornography. Mercer-Kinser argues that the district court should have made a legal determination about whether the photos were pornographic rather than submit them to the jury. His brief blends theories of sufficiency and admissibility. On one hand, he suggests that the images don't meet the statutory definition of child pornography. And on the other, he claims that because the images aren't child pornography, they were inadmissible, and without them, a judgment of acquittal would've been granted.

As for the sufficiency challenge, the government suggests that we should review for plain error because Mercer-Kinser waived a general sufficiency challenge. It's true that a defendant is limited on appeal to the same insufficient-evidence theory that he advanced before the trial court. *United States v. Chance*, 306 F.3d 356, 369 (6th Cir. 2002). But where the record reveals that the trial court (and the government) construed the Rule 29 motion as applying to the entire charge—like by reviewing the sufficiency of each element—waiver is inappropriate. *Id.* at 371.

The government is right that counsel's Rule 29 motion before the district court only addressed the mens rea. The transcript, however, reveals that the government interpreted the motion as referring to the sufficiency of each element and addressed them all. *See* R.86, Trial Tr., PageID 1352–54. As did the court. *Id.* at PageID 1355–56. So we review the issue de novo. *United States v. Aldridge*, 98 F.4th 787, 793–94 (6th Cir. 2024).

When we review the sufficiency of the conviction, we view the evidence in the light most favorable to the verdict. *Id.* We ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sliwo*, 620 F.3d 630, 633 (6th Cir. 2010). And in so doing, we look at all the admitted evidence, even if admitted erroneously. *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (per curiam).

**i.**

Child pornography refers to "any visual depiction" that "involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). Sexually explicit conduct is

further defined, among other things, as "graphic or stimulated lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(B)(iii). And though the statute does not define "lascivious," like other circuits, we have endorsed the jury's use of factors to determine whether a photo captures the necessary prurience. *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009). These factors include:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* (quoting *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal.1986)). This list is neither exhaustive nor mandatory, so the jury must individually assess each case and each image.[3] *Id.*

## ii.

The government introduced the seven photos through Agent Nichols. And the jury found that each image was child pornography. On appeal, we have reviewed the seven images ourselves to ensure that the jury did not err in this finding. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 507–08 (1984) ("And in its recent opinion identifying a new category of unprotected expression—child pornography—the Court expressly anticipated that an independent examination of the allegedly unprotected material may be necessary 'to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression." (citation modified)); *Brown*, 579 F.3d at 685 ("In sum, considering the images themselves, the number and sequence of the images, and Defendant's admissions, the district court did not err in finding, by a preponderance of the evidence, that Defendant took lascivious

---

[3]The jury was instructed on all these definitions.

images of more than one minor."); *United States v. Boam*, 69 F.4th 601, 608 n.7 (9th Cir. 2023) (same); *Frabizio*, 459 F.3d at 86 (same).

A reasonable jury could have found that these photos are sufficiently sexually explicit and lascivious to be child pornography. And very little must be said on the topic to explain why. Sometimes, "a thousand words are not necessarily worth a picture." *Frabizio*, 459 F.3d at 86. Each image captures a young girl, and each focuses on her pubic area or breasts. The images are sexually suggestive because of the girl's clothing, and in how she is posed. As well, several images show the girl posed with male genitals or explicitly refer to oral sex, and both imply a willingness to engage in sexual activity. *See Dost*, 636 F. Supp. at 832. No rational juror could confuse these images for erotica. Sufficient evidence supports the jury's finding that the images were child pornography.

### iii.

As to Mercer-Kinser's challenge to the admissibility of the images, this argument also fails. Section 2252A(a)(2)(A) punishes the knowing receipt or distribution of any child pornography through any facility of interstate or foreign commerce, including by a computer. In a child-pornography conviction whether the images are pornographic is an essential element—without it, there is no crime. And whether evidence satisfies a statutory standard for an essential element of a crime is quintessentially a jury question. *See United States v. Soto*, 794 F.3d 635, 663 (6th Cir. 2015) ("If a fact is 'an "element" or "ingredient" of the charged offense,' then a jury must find that fact beyond a reasonable doubt." (quoting *Alleyne v. United States*, 570 U.S. 99, 107 (2013)).

As we've already explained, a determination that the images were not, as a matter of law, child pornography would've been inappropriate here. So whether these images were child pornography was properly reserved for the jury. *Evers v. United States*, No. 17-5419, 2017 WL 8794876, at *2 (6th Cir. Oct. 27, 2017) ("But whether an image contains a lascivious exhibition is a question of fact for the jury . . . ."); *see also United States v. Al-Awadi*, 873 F.3d 592, 600–01 (7th Cir. 2017) (same); *United States v. Wallenfang*, 568 F.3d 649, 657–58 (8th Cir. 2009)

(same); *United States v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006) (same); *Nelson v. Roberts*, 740 F. App'x 935, 940 (10th Cir. 2018) (same).

Mercer-Kinser contested whether the images depicted child pornography, so the government had to prove this element. Thus the court properly admitted the images.

**2.**

Next, Mercer-Kinser challenges Agent Nichols's testimony about the deleted bookmarks found on his phone. The district court limited testimony to the bookmark titles and the fact that the links were on the phone.[4] But Mercer-Kinser says even this was erroneous, insisting that the government couldn't establish that he accessed these links as opposed to someone else at the halfway house.

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. We agree that proof Mercer-Kinser bookmarked websites that host child pornography doesn't, on its own, establish his receipt or possession of child pornography. But it does make that fact more likely, so it was admissible.

Even if these bookmarks led to forums where men can freely discuss their sexual fetishes, and even if that speech is protected by the First Amendment, neither precludes the bookmarks' relevance or admissibility. The First Amendment poses no barrier to the admission of relevant evidence. *Wisconsin v. Mitchell*, 508 U.S. 476, 489–90 (1993) ("The First Amendment, moreover, does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.").

In any event, the bookmarks were probative of Mercer-Kinser's knowledge and intent. Saving a website that hosts child pornography makes his theory of the case—that someone else downloaded the images or that he accidentally downloaded them—much less likely. R.85, Trial Tr., PageID 1140–41 (explaining theory of the case during opening arguments); *id.* at 1245–46

---

[4]The first link was "JBPill" or "Jailbait Pill," a defunct website that had contained forums so people could make posts and also view a "jailbait gallery." Then there was "motherless," which was a forum for sharing images and videos. And finally, there was "RGIF" which referred to "Raping Girls is Fun." Aside from these names, the agent didn't offer any other detail.

(cross-examination of Nichols); R.86, Trial Tr., PageID 1450–54 (closing arguments). At bottom, even if others had access to the phone, the jury was not required to adopt Mercer-Kinser's version of the facts.

Nor does the remote possibility that someone else could have added the bookmarks to Mercer-Kinser's phone render the evidence insufficient to support a conviction. Alongside the other evidence admitted at trial—Mercer-Kinser's prior conviction, his texts with his friends, his suicide attempt, and his own testimony about his sexual interest in children—the bookmarks reinforced the same point about Mercer-Kinser's intent to view child pornography. Of course, the government carries the burden to prove the crime beyond a reasonable doubt, but that doesn't also require the government to remove every possible hypothesis except that of guilt. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994). Significant evidence connected Mercer-Kinser to the phone and the jury could have reasonably believed that he saved the bookmarks.

**B.**

Mercer-Kinser next claims that admitting the text messages between him and his daughter violated Federal Rule of Evidence 404(b). We disagree.

Before trial, Mercer-Kinser denied viewing child pornography. And he maintained this position at trial, arguing that he only ever sought child erotica. As a result, he placed his intent and the possibility of mistake at issue. The government presented these text messages as evidence that, when Mercer-Kinser viewed child pornography, it was not by accident. Now, Mercer-Kinser claims that the government was hiding its true reason for admitting the texts: to show he was a bad father, to place him in an "unfavorable position with the jury," and to show that he must be guilty now because he was once guilty of a child pornography offense.[5] Appellant Br. at 20–22.

Rule 404 generally prohibits using evidence of a defendant's character to prove that, on a specific occasion, the defendant "acted in accordance with the character." Fed. R. Evid. 404(a)(1). But the rule does allow other-acts evidence if it is relevant to prove, among other

---

[5]The government admitted evidence of his prior conviction under Rule 414 of the Federal Rules of Evidence. Mercer-Kinser does not argue that this admission was somehow impermissible.

things, the defendant's intent, knowledge, absence of mistake, or lack of accident. *Id.* 404(b)(2). We review evidence admitted under 404(b) with a three-part test. First, we review for clear error whether the "other act" took place. *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008). Then, we review de novo whether the evidence was admissible for a "proper purpose." *Id.* And finally, we review for an abuse of discretion whether the admission was unfairly prejudicial. *Id.*

Mercer-Kinser does not dispute that these text messages were exchanged, so we jump to whether there was a proper purpose. There was. Even a cursory review of the messages bears some indicia of his knowledge and intent to receive and possess child pornography. A sampling of his texts shows why. They read for example, "[D]o you still feel that way? That there's nothing wrong with watching pictures and videos of kids doing sex stuff?" R.89, Exs. on Appeal, PageID 1561. And he asked, "well, what about the kids in the video? Are THEY Doing anything wrong, by DOING the sex stuff? As long as they're not hurting eachother, [sic] I mean." *Id.* at PageID 1563. Then he doubled down: "so it's ok for kids to have sex as long as then [sic] all want to? . . . So if everybody who's doing it is ok with it, then they're not hurting eachother, [sic] right?" *Id.* Then he tripled down: "what about the adults in the pictures and videos? Were they doing anything wrong? . . . As long is [sic] they weren't HURTING the kids, of course." *Id.* at PageID 1564. And finally, he wanted his daughter's thoughts about whether the adults participating in the sex acts were "doing anything wrong." *Id.*

"Kids doing sex stuff" doesn't refer to child erotica; it describes child pornography. Even if the texts didn't expressly state that he received (or viewed) child pornography, they were highly probative of his knowledge—that he found child pornography permissible, even beneficial. And as a result, the texts make it more likely that Mercer-Kinser's subsequent consumption of child pornography was not an accident. This evidence had a proper purpose.

There was also no unfair prejudice. Evidence that is "gruesome or disturbing" is not by itself, unfairly prejudicial. *United States v. Boyd*, 640 F.3d 657, 667–68 (6th Cir. 2011). And just because evidence paints the defendant in a "bad light" doesn't make it unfairly prejudicial either. *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). It is those "[i]nflammatory details that have little probative value" that we consider "unfairly prejudicial—as opposed to simply prejudicial." *United States v. Libbey-Tipton*, 948 F.3d 694, 704 (6th Cir. 2020); *United*

*States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) ("We have interpreted 'unfair prejudice' to mean the undue tendency to suggest a decision based on improper considerations; it does not mean the damage to a defendant's case that results from legitimate probative force of the evidence."). So the key question is whether the texts are "more lurid" and "more interesting" than the actual charge. *Libbey-Tipton*, 948 F.3d at 704 (internal quotation marks omitted). No, they're directly related.

There's no denying, as Mercer-Kinser notes, that the texts would place him in an unfavorable position with the jury because they're prejudicial. The texts show a father asking his preteen daughter for her acknowledgment that sex between an adult and a child is sometimes permissible. But in a case in which the charge is the *knowing* receipt and possession of child pornography, such texts bear directly on his intent. They indicate his own view that sex between an adult and child, and perhaps a photograph of such conduct, isn't a problem. These texts were properly admitted.[6]

## C.

Finally, Mercer-Kinser claims that the district court erroneously denied his motion to dismiss his indictment. His challenge is hard to pin down, but he seems to suggest two things. First, that § 2252A is unconstitutional on its face. And second, that § 2252A is unconstitutional as applied to him because the government used protected First Amendment activity against him.

As far as he tries to raise a facial challenge, we have foreclosed this possibility because of § 2252A's knowledge requirement. *United States v. Brown*, 25 F.3d 307, 310 (6th Cir. 1994) ("[I]n concluding that § 2252(a)(2) incorporates a scienter requirement as to the character of the materials involved, we join the majority of the courts of appeals that have addressed the constitutionality of § 2252 and the sufficiency of the statute's knowledge requirement." (collecting circuit cases)). The mens rea ensures that the statute is not impermissibly overbroad. *United States v. Tagg*, 886 F.3d 579, 589 (6th Cir. 2018).

---

[6]Even if we agreed with Mercer-Kinser that the admission was in error, we would find that the error was harmless. The record evidence of his guilt was "overwhelming," so we're confident that the jury wouldn't have been "substantially swayed" by the admission of the texts. *United States v. Pritchett*, 749 F.3d 417, 432–33 (6th Cir. 2014) (quoting *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011)).

Mercer-Kinser's as-applied challenge similarly fails. He argues that the texts between him and his daughter, texts between him and his friends about their sexual preferences, his blogging on forums with other like-minded folks, and his consumption of images of child erotica are all protected by the First Amendment. These all may very well be protected activities. But as we've explained, there is no constitutional problem when the government offers this evidence to support a conviction. And since this content was relevant to his intent and the absence of mistake, there was no problem in its admission. Instead, this content pointed at his interest in child pornography, so it tended to show his *knowing* receipt and possession of such images—the two crimes he was indicted for.

### III.

For all these reasons, we **AFFIRM** his conviction.