# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3396

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Andrew Charles Kain, | * | |
| | * | |
| Defendant - Appellant. | * | |

———————

Submitted:  September 25, 2009
Filed:  December 22, 2009 (corrected December 31, 2009)

———————

Before LOKEN, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

———————

LOKEN, Chief Judge.

Andrew Charles Kain was convicted after a bench trial of possessing marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 860(a), and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  The district court[1] sentenced Kain to concurrent 78-month prison sentences on each count. He appeals the child pornography conviction, arguing the government failed to prove essential elements of the charge and the district court erred in admitting testimony that one image depicted a minor child, and raising one sentencing issue.  We affirm.

———————

[1]The HONORABLE RODNEY W. SIPPEL, United States District Judge for the Eastern District of Missouri.

# I. Sufficiency of the Evidence

**A. The Relevant Statute.** In the Child Pornography Prevention Act of 1996, Congress found that "prohibiting the possession and viewing of child pornography" will help "to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children." Pub. L. No. 104-208, Tit. I, § 121, subsec. 1(12), 110 Stat. 3009-27 (1996). The Act added 18 U.S.C. § 2252A to the arsenal of federal statutes prohibiting the sexual exploitation and abuse of children. Kain was convicted of violating § 2252A(a)(5)(B), which as amended provides that any person who "knowingly possesses, or knowingly accesses with intent to view, any . . . computer disk, or any other material that contains an image of child pornography" that has been transported or produced in interstate commerce "by any means, including by computer," shall be fined or imprisoned not more than ten years.[2]

"Child pornography" includes a "visual depiction" whose production "involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A). "Visual depiction" includes "data stored on computer disk or by electronic means which is capable of conversion into a visual image." § 2256(5). "Sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of any person." § 2256(2)(A)(v). A "minor" is "any person under the age of eighteen years." § 2256(1). Kain asserts, and the government does not contest, that a defendant to be convicted under § 2252A(a)(5)(B) must know both that the material viewed is sexually explicit, and that the individuals depicted are actual minors. Cf. United States v. X-Citement Video, 513 U.S. 64, 78 (1994).

**B. Background.** Police seized Kain's laptop computer during a warrant search of his home for evidence of marijuana trafficking. Officers obtained a separate

---

[2]Congress amended § 2252A(a)(5)(B) in 2008. Although Kain's offense predated the amendment, his brief on appeal quotes the current version.

warrant to search the computer, made an exact copy of the hard drive, conducted a forensic examination, and found one hundred or more images of suspected child pornography. Count II of the indictment charged Kain with knowing possession of child pornography, beginning at a time unknown and including the date on which the computer was seized. Count II individually identified twenty-seven images of alleged child pornography. After a bench trial, the district court's verdict found Kain "guilty of the offense of possession of child pornography" charged in Count II.

On appeal, Kain argues that the government failed to prove (i) that he knowingly possessed images of child pornography found on his computer; (ii) that the images depicted actual children under the age of eighteen, and that he knew those facts; and (iii) that twenty-two of the twenty-seven images depicted lascivious exhibition of the genitals, and that Kain knew that any of the images were child pornography. We review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt, even if the evidence "rationally supports two conflicting hypotheses." United States v. McArthur, 573 F.3d 608, 614 (8th Cir. 2009) (quotation omitted). Kain's conviction for violating 18 U.S.C. § 2252A(a)(5)(B) must be upheld if the government proved all the elements of the offense as to any one of the twenty-seven images. See United States v. Wallenfang, 568 F.3d 649, 658 (8th Cir. 2009).

**C. The Knowing Possession Element.** At trial, narcotics detective Darryl Balleydier testified that he obtained and executed a warrant to search Kain's house and seized a laptop computer. Two days later, Kain called an investigator and said he wanted to get his computer back and "clean it out." Detective Brian Mize testified that he received the computer, made an exact copy of the hard drive, and conducted a forensic examination. One desktop icon was a folder labeled "Y," which contained twenty-one of the images specifically described in Count II of the indictment. Based on his experience as a father and child pornography investigator, Detective Mize

opined that the images depicted prepubescent females. He found the other six images described in Count II in the computer's "temporary internet" and "orphan" files. These images included prepubescent females engaged in sexual intercourse with, performing oral sex on, and masturbating adult males. Detective Mize described "temporary internet" files as locations where the computer temporarily stores web pages that were previously viewed "so they can be viewed on the computer itself."[3] "Orphan" files are files "that were on the computer somewhere saved" but were subsequently deleted, "so the computer doesn't know exactly where they came from."

Detective Mize testified that he ran a virus scan on the hard drive and located several "Trojan" programs.[4] However, based on the location of many images in a desktop folder, Kain's knowledge of the images in that folder, and the presence of an updated virus scanner, Mize opined that the images charged in Count II were not placed on the hard drive by a Trojan. Mize also examined the computer's Internet Explorer browsing history, which evidenced repeated accessing of sites such as "/lolita_kds.html," "Underground-love.com," and "XXX-Land.com."

FBI Agent Patrick Cunningham testified that, when arrested, Kain admitted he owned the computer and had used it to download 40-50 images of child pornography to the "Y" file. When told investigators found 405 images, Kain responded, "[i]f they

---

[3]Other cases have considered images found in a computer's "cache files," described as images the Web browser automatically saves to "allow visits to these pages to be processed much faster." United States v. Tucker, 305 F.3d 1193, 1197 n.7 (10th Cir. 2002), cert. denied, 537 U.S. 1223 (2003). See Microsoft Computer Dictionary 81 (5th ed. 2002) (a computer "cache" is a "special memory subsystem in which frequently used data values are duplicated for quick access").

[4]Trojans, also known as "Trojan horses," are "destructive program[s] disguised as a game, utility, or application," that, when run, "do[] something harmful to the computer system while appearing to do something useful." Microsoft Computer Dictionary at 530.

found 405 images, then there were 405 images on the computer." Sergeant William Cawthon of the Texas Rangers testified that he interviewed a nine-year-old girl during an unrelated investigation who was the minor female in one of the images.

In defense, computer forensic examiner Joshua Restivo opined, based on Detective Mize's report, that the "likely cause" of all the images shown in court being found in the hard drive of Kain's computer was that they were placed there by Trojan viruses. Restivo also testified that the temporary internet and orphan files were in "user inaccessible space," and that it was not possible to determine from Detective Mize's report whether the twenty-seven images depicted real children.

After receiving extensive post-trial briefs, the district court issued its written verdict, finding with respect to Count II:

> There was expert testimony where the internet history of the hard drive was examined and showed that web sites associated with the pictures that were found had been visited by that computer . . . . Mr. Kain was the only one to use that computer . . . therefore, the Government established that he exercised the dominion and control over the computer and the child pornography found thereon.

The court reviewed the testimony of defense expert Restivo and found it "not credible." While Restivo's opinion that no one could say whether or not Kain or the Trojans had downloaded the child pornography "might have been somewhat persuasive," the court found that Restivo "destroyed his own credibility" by opining that more likely than not Trojans put the child pornography on the computer. "[Y]ou can't have it both ways," the court observed, further noting that Restivo's opinion was contrary to Kain's admissions to the investigating officers.

On appeal, relying heavily on the testimony of defense expert Restivo, Kain argues that the government (i) failed to prove knowing possession of the child

pornography images found in the "Y" folder because Detective Mize's virus scan found powerful Trojans that, when executed, can take over an infected computer and place a child pornography folder on the computer's desktop, and (ii) failed to prove knowing possession of the images found in "temporary internet" and "orphan" files because they were in user inaccessible space outside Kain's control.

The presence of Trojan viruses and the location of child pornography in inaccessible internet and orphan files can raise serious issues of inadvertent or unknowing possession. See United States v. Romm, 455 F.3d 990, 998-1001 (9th Cir. 2006); United States v. Shiver, 305 Fed. App'x 640, 642-43 & n.4 (11th Cir. 2008); Howard, Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files, 19 Berkeley Tech. L.J. 1227 (2004). But these are issues of fact, not of law. "[A]ctual or constructive possession is a finding of fact we review for clear error." United States v. Denis, 560 F.3d 872, 873 (8th Cir. 2009). The presence of child pornography in temporary internet and orphan files on a computer's hard drive is *evidence* of prior possession of that pornography, though of course it is not conclusive evidence of knowing possession and control of the images, just as mere presence in a car from which the police recover contraband does not, without more, establish actual or constructive possession of the contraband by a passenger. See United States v. Payne, 377 F.3d 811, 815 (8th Cir. 2004).

Here, the district court expressly found Restivo "not credible," a finding that is "virtually unassailable on appeal." United States v. Sicaros-Quintero, 557 F.3d 579, 582 (8th Cir. 2009). Kain's admissions and Detective Mize's testimony explaining his forensic examination of Kain's computer provided ample support for the district court's finding that Kain knowingly possessed the images of child pornography found on his computer. As we have said in another context, "[c]onstructive possession of contraband is established when a person has ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is

-6-

concealed." United States v. Cortez, 935 F.2d 135, 143 (8th Cir. 1991) (quotation omitted).

A computer user who intentionally accesses child pornography images on a web site gains actual control over the images, just as a person who intentionally browses child pornography in a print magazine "knowingly possesses" those images, even if he later puts the magazine down without purchasing it. Congress in enacting and later clarifying § 2252A(a)(5)(B) made clear its intent to prohibit the viewing of child pornography in order to protect its child victims. Viewed in the light most favorable to the verdict, the evidence was sufficient for the district court to reasonably find, beyond a reasonable doubt, that Kain knowingly possessed the images of child pornography found on his computer.

**D. The Actual Minor Children Element.** Child pornography is defined, for purposes of § 2252A(a)(5)(B), as a visual depiction of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2256(8)(A) and (C). We construed that term as referring to depictions of actual children in United States v. Vig, 167 F.3d 443, 449-50 (8th Cir.), cert. denied, 528 U.S. 859 (1999), a construction no doubt mandated by the Supreme Court's subsequent decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002). But the government is not required to introduce evidence other than the images themselves to prove they depict real rather than computer-generated children. Vig, 167 F.3d at 449; accord United States v. Deaton, 328 F.3d 454, 455 (8th Cir. 2003).

Defense expert Restivo testified that, based on Detective Mize's report, one cannot know whether the twenty-seven images are composite, "nonauthentic" images of real children (he admitted they did not appear to be computer-generated images). Relying on that testimony, Kain argues the government produced insufficient evidence that the images on his computer depicted actual children under the age of 18. We disagree. The government's evidence included the twenty seven images, Detective

Mize's opinion the depicted females were prepubescent minors based on their physical features, and testimony by Texas Ranger William Cawthon that the girl depicted in one image was about nine years old when he interviewed her some years after the photograph was taken. Putting aside whether a real child depicted in a composite image may fall within the definition of "identifiable minor" in 18 U.S.C. § 2256(9), in which case the visual depiction would be child pornography under § 2256(8)(C), the evidence here was more than sufficient to support the district court's finding that the images depicted real minors. Compare United States v. Rayl, 270 F.3d 709, 714 (8th Cir. 2001) (upholding a jury verdict).

Kain further argues the evidence was insufficient to prove that he knew the images depicted actual minors. It is likely that Kain's knowing possession of so many images of child pornography satisfied the government's burden on this element. But in any event, Kain's admissions when arrested remove all reasonable doubt.

**E. The Lascivious Exhibition of Genitals Element.** Kain argues that the government presented insufficient proof that twenty-two of the images included a "lascivious exhibition of the genitals or pubic area of any person," one definition of sexually explicit conduct. See 18 U.S.C. § 2256(2)(A)(v). "A depiction of a child is a lascivious exhibition of the genitals when 'the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer.'" Rayl, 270 F.3d at 714, quoting United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999), cert. denied, 529 U.S. 1029 (2000). The other five images depict sexual intercourse or masturbation, which are explicitly included in the definition of sexually explicit conduct. 18 U.S.C. § 2256(2)(A)(i) and (iii). Kain argues the government failed to prove he knew that any of the twenty-seven images depicted sexually explicit conduct because these five were in user inaccessible space.

We have reviewed the twenty-seven images. The government argues the district court reasonably found that all depict lascivious exhibition of the genitals or pubic area of minor females. At least as to most of the twenty-two images challenged by Kain on appeal, we agree. They depict nude or partially clothed prepubescent girls and focus on the child's genitals or pubic area in a way that is "designed to appeal to the sexual appetite." Wallenfang, 568 F.3d at 658 (quotation omitted). We have cautioned that, in a jury trial, the district court should make a preliminary review of whether materials offered by the government depict sexually explicit conduct as a matter of law, to avoid the potential prejudice of submitting to the jury a large volume of prurient materials that could not properly be found to be child pornography. But there is no such risk in a court trial. We conclude that the district court reasonably found that one or more of the twenty-seven images depicted sexually explicit conduct as defined in § 2256(2)(A), and that Kain knew that fact based on his knowing possession of the images and his admissions when arrested.

## II. The Texas Ranger's Testimony

Texas Ranger William Cawthon testified on direct examination, without objection, that he met the girl depicted in one of the twenty-seven images as part of an unrelated child pornography investigation, and that the girl was born in 1990 and was "approximately five years old" when the photograph was taken. On cross-examination, Cawthon stated that his testimony as to her age was based on reviewing the child's birth certificate and on the child telling Cawthon, "That's me in the photograph." Defense counsel then said, "Judge, it's not personal knowledge, and I move to strike it on grounds of hearsay and Sixth Amendment confrontation." Government counsel responded that Cawthon "recognize[d] the girl from the photograph as the girl that he met." Therefore, the government argued, Kain's objection "goes to the weight" of that testimony. The district court then overruled Kain's objection. Cawthon testified on further cross examination that his ability to

recognize the girl he interviewed as the girl in the photograph was based "in part" on her saying, "That's me in the photograph."

On appeal, Kain argues that "None of Ranger Cawthon's testimony should have been admitted in the face of [Kain's] timely hearsay objection" and the resulting Confrontation Clause violation. Like the district court, we disagree. Kain made no contemporaneous objection to Cawthon's testimony on direct exam -- that he met the girl in the photograph and determined she was the young child depicted in the photo. Nor would an objection have been well founded. See Fed. R. Evid. 701(a) (a lay witness may express an opinion "rationally based on the perception of the witness"); United States v. Oliver, 908 F.2d 260, 263 (8th Cir. 1990).

On cross exam, Cawthon testified that his opinion was based in part on what the child told him -- "That's me in the photograph." That testimony was hearsay, and an objection limited to that testimony might well have been sustained. But of course, that was not the objection made, because it would have left Cawthon's testimony on direct exam unimpeached. Instead, the objection was to strike *all* of Cawthon's testimony because it was based *in part* on hearsay by a declarant not shown to be unavailable who Kain did not have a prior opportunity to cross-examine. See generally Crawford v. United States, 541 U.S. 36, 52-54 (2004). Government counsel argued, correctly in our view, that Kain's objection simply went to the weight of Cawthon's opinion that the young girl he interviewed was the girl in the photograph. Therefore, the motion to strike was properly denied because Cawthon's opinion based on his personal comparison of the girl and the photograph was still admissible. The district court did not abuse its substantial discretion in denying Kain's motion to strike all of Cawthon's testimony.

### III. A Sentencing Issue

Kain argues that the district court committed procedural error at sentencing by imposing a two-level increase on the ground that the child pornography offense involved "at least 10 images, but fewer than 150." U.S.S.G. § 2G2.2(b)(7)(A). The government must prove the facts needed to support a sentencing enhancement by a preponderance of the evidence, and we review the district court's fact findings for clear error. See United States v. Hansel, 524 F.3d 841, 847 (8th Cir. 2008). At sentencing, the district court overruled this objection based upon its verdict "beyond a reasonable doubt that these were depictions of child pornography." Based on our review of the twenty-seven images, there was no clear error.

The judgment of the district court is affirmed.

_____