E. GRADY JOLLY, Circuit Judge,
dissenting:
The record does not reflect whether the jury box had more than twelve chairs, but *155 we do know — and we know for sure — that two more jurors are trying to crowd into the box. I respectfully dissent from the majority opinion, which is little more than a presentation of the defendant’s case and the substitution of the views of judges for the views of jurors. The majority refuses to view the evidence, as it should, in the light most favorable to the verdict, but instead marshals the evidence to support the defendant’s position, which the jury rejected. Furthermore, the majority examines each of the key evidentiary items only in isolation and effectively says that none of the individual items of evidence, standing alone, supports Keith Moreland’s conviction, while ignoring the totality of the incriminating evidence.
First, and throughout its opinion, the majority embraces the primary defense argument — placing blame on Keith’s dead father, George, instead of Keith himself — a credibility choice for the jury to make. Second, the majority molds the testimony of the government’s computer analyst, Matthew Manley, to suit its purposes, arguing the testimony’s weak points, while failing properly to accept its strong points, which were accepted by the jury. Third, the majority insists that no reasonable individual could have believed that Keith Moreland’s behavior, after his wife discovered pornography on their computers, indicated his guilt — again, an inference for the jury to make.
I.
It is fundamental that “we view the evidence in the light most favorable to the verdict and uphold the verdict if, but only if, a rational juror could have found each element of the offense beyond a reasonable doubt.” See United States v. Brown, 186 F.3d 661, 664 (5th Cir.1999). After formally acknowledging this standard of review, the majority disregards it — -and not only disregards it, but combs the record to make every argument in favor of exoneration. When the proper legal standard is faithfully applied, it is manifest that we must uphold the jury’s verdict of guilty.[1]
II.
A.
The majority overturns the conviction on the ground that “there was not sufficient evidence for a rational jury to find beyond a reasonable doubt that Keith knowingly and constructively had possession of the 112 digital images found in the computers’ slack space.” Majority Op. at 150.[2] This conclusion and holding necessarily require the majority to minimize the incriminating evidence in this case that the jury heard.
*156 To review: The hard drives on both of the computers, which Keith’s wife turned over to authorities,[3] contained child pornography; pornographic sites with teen themes were regularly visited while these very same computers were logged in under Keith’s name; these pornographic sites were on at least some occasions visited within seconds or minutes of Keith’s Yahoo account being accessed; Keith made no meaningful attempt to assuage his wife’s concerns immediately after she discovered one of the pornographic sites on the family computers and left with their children to go to her parents’ home; and Keith and the defense witnesses waited until the eve of trial, well after George Moreland’s death, to blame George for the crime. In other words, there was plenty of evidence to support this conviction if the jury — as indeed it did — concluded that the “My dead Daddy did it” defense was deceitful and fictional nonsense.
Before addressing the majority’s specific critiques of the evidence, I note that the majority employs an improper analysis in assessing the evidence of guilt: it treats evidentiary items individually and independent of the whole; the analysis should ask whether all of the evidence, viewed as a whole, supports the conviction. See United States v. Miller, 146 F.3d 274, 281 (5th Cir.1998) (“No single piece of circumstantial evidence need be conclusive when considered in isolation; the question, rather, is whether the evidence, when considered as a whole, provides a substantial basis for the jury to find that the defendant’s possession was knowing.”). With that said, I now turn to analyze the majority’s itemization of reasons, notwithstanding the incriminating evidence of guilt the jury’s verdict, the jury’s resolution of credibility issues, and the proper standard of review in favor of the jury’s verdict, that the appellate court should substitute its judgment for that of the jury.
B.
The rationale underlying the majority opinion is that Keith’s father, George Moreland, was more likely the individual who possessed the pornographic images at issue. In support of “blaming Daddy” — a “theory” presented to, and rejected by, the jury — the majority raises several argumentative points.
First, the majority notes that Keith, along with several of his family members (all biased witnesses, a fact that the jury apparently understood) — specifically, his wife Deanna, his brother Eric, and Eric’s wife Kayla — all supported Keith’s “blame Daddy” defense by testifying that George was a great pornographic fan.[4] The majority further notes that Keith and Deanna testified that George frequently accessed the computers in Keith’s home under Keith’s user account and accessed his Yahoo account to play dominoes, among other things. The primary problem with the majority’s reasoning is that the government demonstrated to the jury that no one — and I mean no one — had intimated to law enforcement that George might have *157 committed this offense until trial.[5] The jury clearly was made aware of this. Yet, the majority makes no explicit attempt to justify this inexplicable delay,[6] but does concede, as it must, that the jury rejected this all too convenient and untimely canard.
Similarly, the majority points to no testimony that specifically indicates that George viewed pornography on the family computers. If viewed in the light most favorable to the verdict, the testimony suggests, at most, that George used his own computer to look at pornography.[7] Rele *158 vant to this point is the majority’s implausible attempt to shape the evidence in favor of reversal: its observation that someone, likely Deanna, contemporaneously accessed Keith’s account along with pornographic sites at a time when Keith was at work on September 28, 2007. See Majority Op. at 151 n.7. To the majority, this single incident undermines the evidentiary value of the many other visits to pornographic sites that came on the heels of someone logging into Keith’s account. The majority reasons that because it was not Keith logged into his account and looking at pornography on this one occasion, then no rational person could conclude that it was Keith on other occasions. Yet the jury did so conclude, perhaps because Deanna’s discovery of pornography on a family computer, call to Keith to inform him of that discovery, and flight from her home to avoid a confrontation is a sequence of events that points to Keith, not George, having accessed that pornography.
The majority next turns to attack the testimony of Matthew Manley, a computer investigator for the city of Columbus who had analyzed the two computers that Deanna turned over to authorities. Indeed, the majority turns away momentarily from its assumed role as juror, assumes the role of defense attorney, and cross examines Manley in an effort to minimize his incriminating testimony before the jury.
Specifically, the majority notes that Manley admitted that an unsophisticated computer user would not have been aware that the images were on the computer. To be sure, Manley explained that the images were recovered from the “disk slack space,” which, in his view, and in the light of his knowledge regarding the way computers work, indicated that someone had likely viewed the images on the internet and thereafter deleted the browsing history. Notably, Keith’s trial counsel did not challenge Manley on this point. Of course, the jury was free to determine that someone, at some relevant time, knowingly assumed possession of these images. Indeed, the majority concedes — as it must— that the presence of child pornography on a computer’s hard drive is evidence of prior possession of that pornography. Majority Op. at 142 n.2, citing United States v. Kain, 589 F.3d 945, 948 (8th Cir.2009).
This evidence, when properly viewed in the light most favorable to the jury verdict — and notwithstanding the majority’s efforts to weaken Manley’s testimony — • enabled the jury reasonably to infer that Keith had attempted to delete from his computer the pornographic images that he had downloaded (i.e., the images recovered from the slack space), and that he was simply unaware that the images were retrievable. The point is this: the majority makes every attempt to minimize and weaken Keith’s possession of the images on his own computer, by repeatedly emphasizing that this evidence, standing alone, does not support the conviction. But the jury heard much more evidence pointing to his guilt.
The majority also attempts to discredit Manley for failing to specify when the illegal images were downloaded. Manley explained that because the images were recovered from the slack space, he was able to recover only the images themselves, and was not able to recover the *159 time stamps. The jury understood this fact, and discredited the inference that the majority would give to this testimony, concluding instead that Keith was nevertheless the culprit. If we view this testimony in the light most favorable to the jury verdict, we should give credence to Manley’s explanation.
Finally, the majority argues that Manley never testified that the pornographic sites that he had discovered in Keith’s browsing history[8] contained child pornography. The majority’s point is that Manley’s testimony that the computer’s browsing history included pornographic sites, including sites for teen pornography, does not, by itself, prove that Keith possessed child pornography. Manley’s testimony permitted the jury to draw a reasonable factual inference that the same person who was frequenting these pornographic sites was the same person who had downloaded the illegal images. It seems that the majority misses the point: this browsing history is, at the very least, circumstantial evidence that someone who was using the same computers that contained illegal child pornography had an ample appetite for pornography depicting young women.
The majority next, and finally, focuses its aim on the evidence of Keith’s purposeful avoidance of Deanna. To better explain this point, I briefly recount the relevant facts.
As I have earlier said, Deanna was using the desktop computer when she discovered a domain name in the browsing history that included the words “teen topanga.” Deanna immediately confirmed that the laptop computer had been used to access the same site. After making these discoveries, she called Keith, who dismissed her concerns and remained at work. When Keith returned home that evening, he found Deanna and the children gone.[9] Despite this, he went to a fishing tournament the next morning; only after receiving a call from Deanna did he return home from the tournament.
The majority, assuming its role as juror, airily dismisses Keith’s behavior, insisting that it fails to support an inference that Keith knowingly possessed child pornography. Keith’s trial counsel argued just that, even contending that Keith’s behavior reflected his innocence. Thus, the jury had two choices: it could believe that Keith’s actions evidenced his innocence, or that his behavior evidenced his guilt. It decided on the latter. The jury was free to accept the defense’s preferred argument, but it did not, and we are bound to review the evidence in the light “most favorable to the verdict[,]” Brown, 186 F.3d at 664, a rule the majority left at the starting gate of its opinion.
*160 III.
To sum up: The key reasons assigned in the majority opinion for reversal are: first, George was likely the culprit in this case; second, Matthew Manley did not determine when the images were deleted, did not determine whether the images came from any of the pornographic sites he found in the browsing history, and did not testify that those sites contained child pornography; and third, Keith’s decision to avoid his wife Deanna after receiving an ominous phone call from her could not be interpreted as an expression of his guilt.
The majority defers to the defendant’s belated alibi instead of deferring to the jury verdict. The resulting irony is that the jury of Keith’s peers rejected his story as made-up nonsense, while the legally sophisticated majority accepted the story as fully plausible.
More serious than the resulting irony, however, is the majority’s disregard for the proper standard for a review of the verdict of the jury and its autocratic reversal of a legally sound conviction.
I respectfully dissent.

. I also specifically note that this court has recently implied that the evidentiary threshold in possession of child pornography cases such as this one may not be particularly high. See United States v. Winkler, 639 F.3d 692, 696 n. 2 (5th Cir.2011).

. I do not respond in depth to the majority's implicit point that none of the images are child pornography because that discussion is dicta. For the same reason, I decline to address the majority's implicit point that the government failed to prove that Moreland was aware that he was viewing child pornography, as opposed to legal pornography.
I briefly respond, however, to one example: the majority implies that the three to five seconds that jurors were given to examine each image was insufficient for the jury to determine whether the images were child pornography. As the government explained at oral argument, however, the jury would have been given additional access to the images during their deliberations upon request. The jury made no such request, suggesting that the properly instructed jurors were confident that the images they had earlier viewed were child pornography.

. By way of background, the two computers are a desktop and a laptop. The desktop had three user names, including Keith's; the only user name on the laptop was Keith’s. Both computers were turned over to the authorities after Deanna discovered a pornographic site in the browsing history of both computers. Subsequent investigation showed that Keith's user profiles on each computer were the only profiles on either computer that contained pornographic files.

. Notably, although Deanna testified that ''[e]verybody that knew the man” was aware that George was a pornography customer, the defense was unable to muster a single disinterested witness to testify regarding George's thirst. The jury took note.

. Deanna's testimony in this respect is somewhat contradictory. She first testified that she had told the investigators that George “was a character that I was very suspicious of.” She also said that she had informed the investigators that George had access to the computers. She further explained that she had said: "I would like to bring up my father-in-law .... [H]e might be someone of interest.” On the other hand, Deanna also testified that she did not remember the investigators “specifically asking” whether George had access to the computers. She then equivocated further, saying “I don't remember that coming up. It should have.” Thus, her own testimony as to what she told the investigators about George is ambiguous at best. The testimony of the investigators, however, paints a clearer picture.
James Burton, an investigator with the Federal Bureau of Investigation, testified that in his conversations with Deanna, she had indicated that “George Moreland may have had an inappropriate relationship with ... Mr. Keith Moreland's daughter, which would have been [George’s] ... granddaughter.” Burton also testified that he did not remember Deanna mentioning that George had access to the computers. Tony Cooper, an investigator with the Lowndes County Sheriff’s Department, confirmed that Deanna “never mentioned he [i.e., George] used the computers.” He further explained: ”[I]n the very beginning, I asked who had access to these computers. She never mentioned him." Finally, Matthew Manley, the computer analyst, testified that he did not remember Deanna mentioning George as a potential suspect.
Keith testified that his attorneys "advised [him] ... not to” identify his father as a potential suspect, but almost immediately equivocated, explaining that "they didn't necessarily tell me not to go to the authorities. I just brought the information to them, and, you know, I thought I was acting like I was supposed to act.”
The record also reflects that the government did not interview the brother, Eric Moreland, as part of its investigation. Eric explained, however, that he never made contact with the police, even after George asked Eric to help him destroy George’s personal computer, because “it really didn’t cross my mind to be important considering it was my father and he was not the one on trial.” Similarly, although the government did not interview Eric’s wife Kayla as part of its investigation, she admitted that she made no attempt to inform the government that George was worthy of investigation.

. In the closing argument at trial, Keith’s trial counsel attempted to explain this failure, arguing that although these witnesses were aware that Keith was the subject of a criminal investigation, they did not notify law enforcement of their suspicions regarding George because they did not know the investigation of Keith was a serious matter.
The majority declines to adopt as its own any argument that ordinary adults were unable to comprehend that a criminal investigation is a serious matter.

. Deanna testified that George had access to the family computers at times when he was alone, and that George was a fan of pornography. She specifically admitted, however, that she “didn't check up on what he did, but he was certainly into — heavily, heavily into pornography.” She also admitted that she and Keith discussed whether Keith should log out of the computers, thereby denying George access, but decided against it. Finally, she stated that "I knew that he [i.e., George] had looked at pornography. I had never [before this incident] seen anyone in our home looking at pornography of any kind.”
Eric testified that George had limited access to his own computer: “there was a lot of folks on it all of the time and stuff, so it was not accessible for whenever he wanted to use it.” He also appeared to testify, however, that George destroyed the very same computer after learning that Keith was being investí *158 gated. Presumably, the point of this latter testimony was to imply that George had used his computer to look at illegal pornography and later destroyed the evidence. The jury may well have found that these two points were inherently contradictory; on one hand, Eric says that George could not conveniently access the computer; on the other hand, he says (implicitly) that George used the computer to look at child pornography, and further says that George somehow destroyed his computer to which he only had limited access.

. To review, Manley testified that pornographic sites, many with teen themes, were visited while Keith’s user profile was logged into the computer and, furthermore, that some such visits occurred within seconds or minutes of Keith’s Yahoo account being accessed. The majority argues that Manley admitted that anyone who knew Keith's log in password could have accessed the relevant accounts; the majority further argues that Keith and Deanna testified that George had access to Keith's accounts. In other words, the majority refuses to accept that the jury, after being presented with this evidence, discredited Keith and Deanna, and the jury alone observed the demeanor of these witnesses and their presentation of Keith’s belated alibis.

. Deanna explained at trial that she had left because she was anticipating a "heated argument” with Keith and "didn't want the children to be present....” She later testified, however — after the defense had more fully presented its theory that Deanna’s dead father-in-law was the responsible party — that she had never believed that Keith was the individual responsible for viewing the pornography: "I couldn't believe it then, and I don't — I certainly don’t believe it now.”