# United States Court of Appeals
## For the First Circuit

No. 12-1639

UNITED STATES OF AMERICA,

Appellee,

v.

BRIAN K. ROGERS,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]


Before

Lynch, Chief Judge,
Stahl and Thompson, Circuit Judges.


Robert C. Andrews for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.


April 30, 2013

**STAHL, Circuit Judge**.  Brian Rogers was convicted by a jury in the District of Maine of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  Rogers now appeals his conviction, arguing that the government did not prove that he knowingly possessed the child pornography that was found on a laptop he sold to a pawn shop.  Rogers also challenges the district court's award of $3,150 in restitution to a victim depicted in the pornography; he asserts that the government failed to establish a causal connection between his conduct and any harm to the victim.  After careful consideration, we affirm both the conviction and the restitution award.

## I.  Facts & Background

The following facts are drawn from the trial record and, in light of Rogers's challenge to the sufficiency of the evidence supporting his conviction, are presented in the light most favorable to the jury verdict.  United States v. Valerio, 676 F.3d 237, 240-41 (1st Cir. 2012).

On July 15, 2008, Rogers's then-wife, Heather Rogers, sold a laptop computer to Coastal Trading and Pawn in Brunswick, Maine.  Later that day, she returned with Rogers himself, who sold a second laptop to the store.  In keeping with Coastal Trading's usual practice, the clerk asked for, and received, the passwords to both laptops, to allow the store's staff to access the computers and restore them to their factory settings.

-2-

The next day, Coastal Trading's computer technician began the process of preparing the second laptop for resale. He turned it on and entered the password that Rogers had provided. In an effort to find the program that would restore the laptop to its factory settings, he looked in the Windows recycle bin. There, he discovered a video file captioned "My 15-Year Old Sister." This discovery prompted him to search the laptop for other videos; he found "quite a few" more. He viewed portions of a few videos and saw "[y]oung children involved in sexual acts." He immediately notified the store manager, who called the Brunswick police.

A few days later, Brunswick Detective William Moir collected the laptop and the associated sales paperwork from Coastal Trading and took them to the police station. Until Moir came to collect it, the laptop remained in the store's back room, and no one accessed it. Moir, who had specialized electronic forensics training, removed the laptop's hard drive and attached it to a "write blocker," which allowed him to view the drive's contents without altering them. After finding some files with names "indicative of child pornography," he took the drive to the Maine State Police Computer Crimes Unit for further analysis. There, he worked with an analyst to copy and review the contents of the drive. They found both videos and still images of children engaged in sex acts.

Detective Moir soon returned to Coastal Trading and seized the laptop that Heather Rogers had sold to the store on her first visit. Nothing of significance was found on that first computer. Moir then obtained a search warrant for Rogers's home, which he and other law enforcement officers executed on July 31. Heather Rogers was there when they arrived; Brian Rogers returned home during the search. When the officers came upon a desktop computer and a case containing compact discs, they seized both.

The hard drive of the second laptop -- the one on which the store employees initially found child pornography -- was subsequently subjected to a more comprehensive forensic inspection. Chris Hull, an analyst with the Computer Crimes Unit, used forensic software to examine the hard drive's contents. He found two user accounts on the drive: an account called "Mingan" (also designated "Admin") and a default "guest" account. He also found six child pornography videos in a "shared" folder associated with the "Mingan" user account, and still images depicting child pornography in the "Temporary Internet Files" and "lost files" folders. The shared folder was created by LimeWire, a peer-to-peer file-sharing program that Hull found in the recycle bin. The Temporary Internet Files folder, as Hull testified at trial, stores files from frequently visited websites that otherwise would have to be loaded remotely, with the goal of speeding up the user's web browsing experience.

Hull also examined the "index.dat" file, which records the computer user's activity, whether it be visiting websites or opening files on the computer itself. The index file reflected numerous visits to websites like "nymphets-first-time-sex.com" (which was also bookmarked in the laptop's default web browser, along with "Natural Lolitas" and "innocent-girl.com."). And Hull found "cookies" (widely used data packets that allow websites to recognize returning users[1]) from various websites, including "son-porno-schoolgirls," a Yahoo user account called "Brian87_2006," and the social networking site Myspace (which appeared to be associated with the same login information as the Yahoo account). Indeed, Detective Moir found a Myspace page for a user called "Mingan"; one of the account's three Myspace "friends" was Heather Rogers, Brian Rogers's wife. As it happens, Hull determined that the password for the user account "Mingan" on the laptop was "Heather," and the password hint associated with that account was "My baby."

Additionally, Hull found ten "infections," i.e., malware programs, on the laptop. To determine whether they might be responsible for the presence of child pornography, he installed the same infections on a test machine that replicated the conditions on the laptop and let them run for a week. No child pornography appeared on the test machine.

---

[1] See In re Pharmatrak, Inc., 329 F.3d 9, 14 (1st Cir. 2003) (describing cookies).

-5-

Hull examined the desktop computer seized from Rogers's home as well. Using the same forensic tools he used on the laptop, he uncovered child pornography images. These files were located in unallocated space, indicating that the files had been deleted by a user but not yet overwritten with new data. He also found two user accounts on the desktop: "Bunny" and "NEXCOM," the latter of which was also captioned "Mingan." Associated with the latter account were internet bookmarks for websites like "LolitasBBS-freeware" and "nasty-virgins.org."

On October 22, 2008, a grand jury indicted Rogers on one count of possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2256(8)(A).[2] After rulings by both the district court and this court related to the suppression of certain statements Rogers made during the search of his house, see United States v. Rogers, 659 F.3d 74 (1st Cir. 2011), the case went to trial. The jury, after hearing testimony about all the events related above, found Rogers guilty. The district court sentenced Rogers to sixty months' imprisonment and eight years' supervised release. As discussed in more detail below, the district court

---

[2] Rogers was charged with possessing the child pornography found on the laptop, but not the images found on the desktop. At trial, he objected to testimony regarding the desktop computer on the ground that it was other-bad-acts evidence under Federal Rule of Evidence 404(b). The district judge allowed the testimony on the ground that it went to intent, knowledge, or absence of mistake, see Fed. R. Evid. 404(b)(2), and gave a cautionary instruction to the jury. Rogers has not renewed his evidentiary argument on appeal.

also ordered Rogers to pay $3,150 in restitution to "Vicky," a woman who was depicted in some of the child pornography materials found on the laptop.

## II.  Analysis

**A.         Sufficiency of the Evidence**

A sufficiency-of-the-evidence challenge to a jury's guilty verdict will not succeed unless no rational jury could have concluded that the government proved all of the essential elements of the offense beyond a reasonable doubt.  United States v. Green, 698 F.3d 48, 56 (1st Cir. 2012).  As noted above, we evaluate the facts and draw all reasonable inferences in favor of the verdict.  Id.  We do not weigh evidence or assess credibility.  United States v. Tavares, 705 F.3d 4, 18 (1st Cir. 2013).

18 U.S.C. § 2252A(a)(5)(B) creates criminal penalties for any person who "knowingly possesses, or knowingly accesses with intent to view, any . . . computer disk, or any other material that contains an image of child pornography" that was produced or transported in interstate commerce, including via computer.  Here, it is undisputed that the images found on the laptop constituted child pornography and that the interstate commerce element was satisfied.  Rogers's challenge focuses instead on the question of knowing possession.  To satisfy the statute's knowing-possession requirement, the government must show that Rogers possessed, and knew he possessed, child pornography.  See United States v.

-7-

X-Citement Video, Inc., 513 U.S. 64, 78 (1994); United States v. Hilton, 167 F.3d 61, 75 (1st Cir. 1999), disapproved of on other grounds by Ashcroft v. Free Speech Coal., 535 U.S. 234 (2002).

To begin with, there can be no serious dispute that the child pornography found on the laptop was downloaded knowingly and deliberately. The web browser's cookies and indexed history indicated that someone had used the browser to make numerous visits to websites related to, or with names indicative of, child pornography, including "nymphets-first-time-sex.com," "Natural Lolitas," and "innocent-girl.com." See United States v. Pruitt, 638 F.3d 763, 767 (11th Cir. 2011) (conviction was supported by "a record of visits to websites with a child-pornography connection"); accord United States v. Ramos, 685 F.3d 120, 132 (2d Cir. 2012); United States v. Kain, 589 F.3d 945, 949 (8th Cir. 2009). Further, the discovery of child pornography in the Temporary Internet Files folder suggests that those images were downloaded when a user visited websites hosting them. Cf. Kain, 589 F.3d at 948. And, as the government observes, the fact that a user bookmarked some of these websites supports the conclusion that they were visited deliberately. Cf. United States v. Kornhauser, No. 12-135-CR L, 2013 WL 1197751, at *2 (2d Cir. Mar. 26, 2013) (summary affirmance); United States v. McNealy, 625 F.3d 858, 870 (5th Cir. 2010).

To be sure, we must be cognizant of "the prevalence and sophistication of some computer viruses and hackers that can prey upon innocent computer users" by placing child pornography on their machines, but "the specter of spam, viruses, and hackers must not prevent the conviction of the truly guilty." Pruitt, 638 F.3d at 766-67. Here, Hull's forensic analysis of the computer, which included running the malware "infections" discovered on the laptop on a test machine for over a week, all but ruled out the possibility that the images had been downloaded by a virus without the user's knowledge. And child pornography (along with a similar pattern of web browsing) was found on the desktop computer seized from Rogers's home, further diminishing the possibility that the presence of the images and videos on the laptop was inadvertent. Lastly, some of the files were found in the laptop's recycle bin, suggesting that someone deliberately attempted to delete them (and thus knew they had been downloaded). See Ramos, 685 F.3d at 132; United States v. Bass, 411 F.3d 1198, 1202 (10th Cir. 2005). On this record, there is no real possibility that this case involved unknowing possession. Cf. Note, Child Pornography, the Internet, and the Challenge of Updating Statutory Terms, 122 Harv. L. Rev. 2206, 2211-14 (2009) (describing ways that a person could unintentionally possess or receive child pornography).[3]

---

[3] There was also no testimony realistically suggesting that the images could have been downloaded or installed after Rogers sold the laptop to Coastal Trading. The pawn shop's employees and

-9-

The only remaining question is whether the government proved that the person who knowingly possessed the images and videos was Rogers himself. We think it did. The user account "Mingan," which was the only user-created account on the laptop, was strongly associated with Rogers, and child pornography videos were found in the shared folder associated with that user account. The password hint for the "Mingan" account was "My baby" and the password itself was Rogers's wife's name (Heather). Rogers himself provided this password to Coastal Trading when he sold the laptop, and has not pointed to evidence suggesting that anyone else knew it. Further, Detective Moir discovered a Myspace profile named "Mingan," one of whose Myspace friends was Heather Rogers. The Myspace profile appeared to share login information with a Yahoo account that the laptop had been used to access: Brian87_2006. Brian, of course, is Rogers's name, and he was born in 1987. See United States v. Boll, 635 F.3d 340, 341 (8th Cir. 2011) (the fact that a computer was registered to "Terry," the defendant's first name, supported the conclusion that he knowingly possessed child pornography found on it); United States v. Koch, 625 F.3d 470, 478 (8th Cir. 2010) (conviction was supported by the fact that "user

_____

all the law enforcement personnel who handled the laptop testified that the computer was not altered in any way after Rogers left it at the store. Further, the laptop's operating system indicated that the child pornography files had been created well before Rogers sold the computer to Coastal Trading (although, as Rogers points out, such information is not impervious to manipulation).

names on both the computer and flash drive [on which child pornography were found] were variations on [the defendant's] first name"). The web browser's cookies showed access to the same Yahoo account, along with visits to the disturbingly named websites discussed above. The web browser also included a bookmark for the U.S. Navy's website; Rogers was a member of the Navy at the time of his arrest.[4]

In light of all this evidence, and the reasonable inferences that can be drawn from it, we think the jury's decision to convict was wholly rational. The evidence amply established that Rogers possessed and used the laptop, and supported the reasonable inference that he was the one who searched for and knowingly downloaded the child pornography. Rogers's suggestions that someone else somehow downloaded or placed the images and videos on the laptop are simply not supported by any evidence adduced at trial. Hull's testimony all but extinguished the possibility that a virus put the images and videos there, and there

---

[4] Less forceful is the government's suggestion that Rogers must have been the laptop's user because it contained computer games with "pugilistic" names like "Dungeons and Dragons" and "World of Warcraft," which the government says are not "games that might appeal to a female," i.e., Heather Rogers. As best we can tell, this argument is simply based on outmoded assumptions about what sort of entertainment appeals to women. See Nick Breckon, Nielsen Estimates 400,000+ Female World of Warcraft Players in US, Shack News (Apr. 8, 2009 2:27 p.m.), http://www.shacknews.com/article/58076/nielsen-estimates-400000-female-world (last visited Apr. 25, 2013) (reporting that a Nielsen Company survey found 428,621 female World of Warcraft players in the United States).

was no suggestion that a third party could have done it after Rogers sold the laptop. Nor was there any testimony that, before the computer's sale, anyone other than Brian and Heather Rogers had access to it (assuming that she even knew the password, which is certainly possible but is not established by any evidence in the record). Thus constrained, Rogers is forced to posit that his now-ex-wife was responsible for the child pornography found on the laptop, but that assertion finds essentially no support in the record, and the jury was entitled to dismiss it. Consequently, we reject Rogers's challenge to the sufficiency of the evidence supporting his conviction. Cf. United States v. Salva-Morales, 660 F.3d 72, 75 (1st Cir. 2011) (per curiam).

**B.      Restitution**

The district court ordered Rogers to pay $3,150 in restitution to "Vicky," a woman whose abuse at the hands of her father at age ten or eleven was depicted in two minutes of video found on the laptop. The order was made pursuant to 18 U.S.C. § 2259, which prescribes a mandatory restitution scheme for victims of certain crimes, including the possession, transportation, or distribution of child pornography. The statute calls for restitution of "the full amount of the victim's losses," including medical services; therapy or rehabilitation; transportation, housing, or child care costs; lost income; attorneys' fees and costs; and "any other losses suffered by the victim as a proximate

result of the offense." Id. § 2259(b)(1), (3). The "victim" is "the individual harmed as a result of a commission of a crime." Id. § 2259(c).

We first considered restitution to a child pornography victim under § 2259 in United States v. Kearney, 672 F.3d 81 (1st Cir. 2012), cert. dismissed, 133 S. Ct. 1521 (2013), which also involved restitution to Vicky.[5] In Kearney, we identified three issues related to the restitution inquiry: (1) whether someone is a victim of a child pornography offense; (2) what causation requirement applies to identify the compensable losses suffered by the victim as a result of the offense; and (3) what amount of restitution is reasonable. Id. at 93. We held that Vicky was plainly a victim of Kearney's crime because she was harmed by the continuing possession and dissemination of child pornography containing her image, which he perpetuated. Id. at 94. As to causation, we joined a number of other circuits in applying a proximate causation standard (although the circuits' applications of that standard have varied), and found "that the proximate cause requirement was satisfied here, because Kearney's actions resulted in identifiable losses as outlined in the expert reports and Vicky's victim impact statements." Id. at 99-100. Finally, we upheld the district court's award of $3,800 as reasonable. We

_____

[5]     Unfortunately, video of Vicky's abuse has been widely disseminated online, leading to numerous child pornography cases in which material depicting her has played a role.

-13-

found no error in the district court's decision to base the restitution award on amounts that Vicky had received in other cases, and we noted that "the restitution award was small, both in absolute terms and as a proportion of the total amount of the restitution request," id. at 101, which came to $226,546.10, id. at 86.

Having sketched the terrain, we turn to the restitution award in this case. "We review orders of restitution for abuse of discretion, reviewing legal questions de novo and subsidiary findings of fact for clear error." Id. at 91. Here, our analysis is straightforward. As Rogers's counsel acknowledged at oral argument, Vicky's restitution request in this case was supported by precisely the same set of materials that she submitted in Kearney: "affidavits and a letter provided by Vicky's attorney, with attached documentation." Id. at 85. Here, as in Kearney, those materials amply established "that Vicky has suffered immensely . . . from the continued dissemination and viewing of" material depicting her abuse. Id. Given that the underlying crimes in the two cases are similar, that the materials supporting the restitution requests are identical, and that there is no evidence that Vicky has been made whole, we see no basis to reach a result here that differs from the one we reached in Kearney. Certainly, Rogers cannot show that the district court abused its discretion by

ordering him to pay slightly <u>less</u> than Kearney had to pay on such a similar record.

Indeed, rather than asserting that this case is materially different from <u>Kearney</u>,[6] Rogers devotes much of his energy to arguing that we should have adopted a stricter causation-of-harm standard like that employed by some other courts. <u>E.g.</u>, <u>United States</u> v. <u>McGarity</u>, 669 F.3d 1218, 1269-70 (11th Cir.), <u>cert. denied</u>, 133 S. Ct. 374 (2012). But <u>Kearney</u> remains binding on us. <u>United States</u> v. <u>Troy</u>, 618 F.3d 27, 35 (1st Cir. 2010); <u>see also</u> <u>United States</u> v. <u>Chiaradio</u>, 684 F.3d 265, 284 (1st Cir. 2012) (applying <u>Kearney</u>). We acknowledge that <u>Kearney</u> left unanswered some questions about how the restitution analysis works; for example, the district court and the attorneys in this case wrestled conscientiously with the question of how to settle on a precise amount to award the victim. Future cases may call for further refinement of the causation and reasonableness inquiries. But this case, which Rogers has not seriously attempted to distinguish from <u>Kearney</u>, does not. Consequently, we affirm the district court's award of $3,150 in restitution.

### III.  Conclusion

For the foregoing reasons, we <u>affirm</u> Rogers's conviction and the district court's restitution award.

---

[6]  For example, Rogers does not attempt to distinguish the notice of his offense that Vicky's attorney received in this case from the notice given in <u>Kearney</u>. <u>See</u> 672 F.3d at 85 & n.4, 100.

-15-