COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and AtLee
Argued at Richmond, Virginia

PUBLISHED

CODY W. BREWER

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
MARCH 10, 2020

v.      Record No. 1665-18-2

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Steven C. McCallum, Judge

Matthew C. Stewart for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Cody W. Brewer appeals his conviction for computer fraud in violation of Code

§ 18.2-152.3.  He contends that the trial court erred by finding that the evidence was sufficient to

prove that he perpetrated a fraud using a "computer or computer network" as defined in Code

§ 18.2-152.2.  We hold that the evidence supports the trial court's ruling that the appellant's

cellular telephone was a device that falls within the statutory definition of a computer.

Consequently, we affirm the appellant's conviction.

I.  BACKGROUND

During 2015 and 2016, the appellant made unauthorized mobile withdrawals from a bank

account maintained by his grandmother, Margaret Peade, at a SunTrust Bank in Colonial

Heights.  Peade, who did not use mobile banking, knew that she had not made the transactions.

Additionally, she had not authorized anyone to make them and did not know who had done so.[1]

Consequently, she reported the unauthorized transactions to the police.

Sergeant T.E. Johnson of the Colonial Heights Police Department investigated the thefts. Johnson identified the appellant as a suspect and arranged to interview him. The appellant admitted engaging in a series of transactions in which he transferred a total of at least $6,000 from Peade's SunTrust account to his accounts with Capital One and Amazon. Evidence established that Peade had once written the appellant a personal check, and a search warrant executed at the appellant's residence produced a voided check from Peade's account.

The appellant was charged with computer fraud based on the bank transactions. At his trial, Monique Gray of SunTrust Bank testified that she obtained the bank's records for Peade's account. Gray noted that the disputed transfers from Peade's SunTrust account to Capital One were listed as "mobile payments." She testified that this notation meant that the transfers were made using a mobile phone.[2] According to Gray, payments could also be made from a desktop computer but using this method would have resulted in an entry listing an "online" payment rather than a "mobile" one as in the instant case.

Gray characterized the type of phone required to generate a "mobile payment" entry in Peade's account records as a mobile "electronic device." She agreed with the prosecutor's characterization that such a mobile transfer would require "online access" and some form of computer-related device.

---

[1] The appellant claimed at trial that he had permission to transfer the money. However, his grandmother testified that he did not. In convicting the appellant, the trial court, as the trier of fact, accepted the Commonwealth's evidence on this point and rejected the appellant's evidence. Additionally, this Court denied the appellant's assignment of error challenging the trial court's ruling on the issue of permission to transfer the funds.

[2] Peade's SunTrust account records, admitted at trial, reflect fourteen "mobile" payments to Capital One over a period of six months totaling about $6,000.

Gray further explained that in order for a person to make such a mobile transfer from the SunTrust account, he would have to "download [onto his mobile phone] the app" of the company he intended to be the recipient of the funds, in this case Capital One, and then use the mobile phone to make the payment. She elaborated that the person would need to enter the routing and account numbers for the SunTrust account. She added that this information could be obtained from a check for the account.

Gray was questioned about a specific transaction reflected in Peade's account records that occurred on October 13, 2015. The transaction was listed as an "electronic[/ACH] debit, Capital One mobile payment." Gray explained that the electronic debit was "money that went out of [Peade's] account electronically" and was transferred to Capital One "using a mobile device." She characterized the "mobile device" needed as "some sort of computer device."

The appellant testified in his own behalf. He admitted that he had a cellular telephone, specifically an iPhone. He conceded that he downloaded the Capital One "app" onto his phone and used Peade's SunTrust account information to transfer money from her account to his Capital One account.

At the close of the Commonwealth's evidence and again at the conclusion of all the evidence, the appellant moved to strike the computer fraud charge. He suggested that the statute does not cover "a mobile payment . . . to a credit card [account]" such as his Capital One account. The prosecutor replied that making "mobile payments . . . on an electronic device such as a smart phone," which requires "access[ing]" the Internet and putting "certain identifying . . . private information" into "the mobile app using the Internet," is behavior proscribed by the computer fraud statute.

The trial court denied the motions. It ruled in pertinent part that "a mobile device such as a smart phone, . . . loaded with an app that permits electronic banking, specifically funds . . .

withdrawn from Sun Trust[ and] deposited into Capital One," was "functionally . . . a computer or computer network" for purposes of the statute.

The court convicted the appellant of computer fraud and sentenced him to ten years for that offense, with all of that time suspended.[3]

## II.  ANALYSIS

The appellant challenges the sufficiency of the evidence to prove that he committed computer fraud as proscribed by Code § 18.2-152.3.  His argument is limited to the claim that the cellular telephone with which he transferred his grandmother's funds was not a "computer" under the applicable statutory definition.

### A.  Standard of Review

In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the "light most favorable" to the Commonwealth.  See Moter v. Commonwealth, 61 Va. App. 471, 473 (2013) (quoting Commonwealth v. Hudson, 265 Va. 505, 514 (2003)).  In conducting this review, the Court defers to the trial court's findings of fact unless they are plainly wrong or without evidence to support them.  See Ramsey v. Commonwealth, 65 Va. App. 694, 697 (2015).  "These principles apply 'with equal force' to bench trials no differently than to jury trials."  Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (quoting Vasquez v. Commonwealth, 291 Va. 232, 249 (2016)).

However, as applicable in this case, to the extent that the issue on appeal requires the Court to determine the meaning of a statute and its terms, it reviews that issue *de novo*.  See Barson v. Commonwealth, 284 Va. 67, 71-72 (2012); Miller v. Commonwealth, 64 Va. App.

---

[3] The appellant was also charged with grand larceny and identity theft, in violation of Code §§ 18.2-95 and -186.3, based on the same course of events.  He was tried and convicted simultaneously for all three offenses.  An assignment of error challenging the grand larceny and identity theft convictions was denied at the petition stage and is not before the Court in this appeal.

527, 537 (2015). Although criminal statutes are to be strictly construed against the Commonwealth, the appellate court must also "give reasonable effect to the words used" in a statute. Johnson v. Commonwealth, 37 Va. App. 634, 639 (2002) (quoting Dillard v. Commonwealth, 28 Va. App. 340, 344 (1998)). Further when interpreting a statute, the Court "'presume[s] that the legislature chose, with care, the words it use[d]' when it enact[ed the] statute." Rives v. Commonwealth, 284 Va. 1, 3 (2012) (first alteration in original) (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337 (2011)). Consequently, if the language in a statute is "plain and unambiguous, we are bound by [its] plain meaning." Tisdale v. Commonwealth, 65 Va. App. 478, 484 (2015) (quoting Lee Cty. v. Town of St. Charles, 264 Va. 344, 348 (2002)).

It is under these well-established legal standards that the appellant's assignment of error is reviewed on appeal.

## B. The Statutory Scheme

Under the Virginia Computer Crimes Act (the Act), "[a]ny person who uses a computer . . . without authority and . . . [c]onverts the property of another[] is guilty of the crime of computer fraud." Code §§ 18.2-152.1, -152.3. The Act specifically defines a computer as "a device that accepts information in digital or similar form and manipulates it for a result based on a sequence of instructions." Code § 18.2-152.2. It expressly excludes from the definition "simple calculators, automated typewriters, facsimile machines, or any other specialized computing devices that are preprogrammed to perform a narrow range of functions with minimal end-user or operator intervention and are dedicated to a specific task." Id.

C.  The Appellant's Smart Phone as a Computer

The appellant suggests that the evidence that he fraudulently transferred money using his cellular telephone was insufficient to prove that he "use[d] a computer" as the term "computer" is defined in Code § 18.2-152.2.

The Act defines the term "computer" broadly.  See Code § 18.2-152.2.  The definition covers all "device[s]" not specifically excluded "that accept[] information in digital or similar form and manipulate[] it for a result based on a sequence of instructions."  See id.  Devices specifically excluded are very basic ones "dedicated to a specific task" and requiring "minimal end-user or operator intervention," such as simple calculators, automated typewriters, and fax machines.  See id.  Cellular phones are not listed among the excluded devices.  See id.

As early as 2014, the United States Supreme Court recognized cellular telephones as devices that contain vast amounts of digital data.  See Riley v. California, 573 U.S. 373, 394-96 (2014) ("[I]it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives . . . .").  It has further noted that a "smart phone" is "a cell phone with a broad range of other functions based on advanced computing capability, large storage capacity, and Internet connectivity."  Id. at 379; see id. at 394 (recognizing that "[e]ven the most basic phones that sell for less than $20 might hold . . . Internet browsing history . . . and so on"); see also Matthew E. Orso, Cellular Phones, Warrantless Searches, and the New Frontier of Fourth Amendment Jurisprudence, 50 Santa Clara L. Rev. 183, 194, 213 (2010) (noting that "smart phones," which include the iPhone, not only "serve as phones" but also "allow a user to access the Internet . . . and use email, among other functions," and opining that "the more a cellular device operates like a full-fledged computer, the 'smarter' it is").

The Supreme Court has emphasized that "[t]he term 'cell phone' is . . . misleading shorthand" because "many of these devices are in fact *minicomputers* that also happen to have the capacity to be used as a telephone." Riley, 573 U.S. at 393 (emphasis added). Additionally, the Court has explained that "[m]obile application[s]" or "apps" are in fact different types of "software on a cell phone." Id. at 396.

Similarly, this Court has described the Internet as "a cooperatively managed global network of smaller interconnected networks." Stickle v. Commonwealth, 68 Va. App. 321, 326 (2017). It has recognized that devices "such as computers, tablets, . . . and *smart phones*" "access[] the internet" and engage in "two-way communication with other devices and locations on the internet." Id. at 327 (emphasis added).

United States Supreme Court and Virginia law clearly recognize the sophistication of cellular phone technology. This includes how smart phones can serve in a variety of ways, including transferring and storing data and accessing the Internet.

The broad and straightforward definition of "computer" in Code § 18.2-152.2 has not previously been interpreted by Virginia's appellate courts.[4] However, we hold that it manifestly includes the appellant's cellular telephone in the manner in which he used it in this case.

The undisputed evidence proved that the appellant's phone was an iPhone and that he purposefully downloaded specialized software, the Capital One app, onto the smart phone. The appellant had a voided check bearing Peade's account information in his residence. The routing and account numbers needed to transfer money from an account could be obtained from a check for that account. The appellant himself testified that he entered the account information for

---

[4] Although the Supreme Court of Virginia applied the Act in Barson, a case involving harassment by e-mail, the definition of computer was not before the Court. In fact, the Court noted that "[t]here [was] no dispute about satisfaction of the required element[] for the use of a computer." 284 Va. at 72, 75.

Peade's SunTrust account into the Capital One app in order to effect the transfer of money from her account at SunTrust into his account at Capital One.

SunTrust employee Monique Gray confirmed that the records for Peade's SunTrust account reflected several "mobile payments" made from that account to a Capital One account using a mobile phone. Gray also confirmed that the transfers required the appellant to download Capital One's app. When asked how a specific transaction using the app occurred, Gray explained that the app electronically debited Peade's account and transferred that money into the Capital One account. She acknowledged that the mobile device effecting the transfer had to have been "some sort of computer device" with "online access."

This evidence wholly supports the conclusion that the way in which the appellant used his iPhone in this instance, by accessing the Internet and using a mobile app to transfer money from one bank account to another, rendered it a computer for purposes of the Act. The phone was clearly a "device that accept[ed] information in digital or similar form and manipulate[d] it for a result based on a sequence of instructions." See Code § 18.2-152.2.[5]

The appellant suggests that a comparison of the crimes defined in Code §§ 18.2-152.7:1 and 18.2-427 indicates that the General Assembly intended to treat offenses committed by computer and telephone differently. Code § 18.2-152.7:1 proscribes using "a computer," as that term is defined in the Act, to commit certain types of harassment. Code § 18.2-427, in pertinent part, proscribes using "any telephone," including any "electronically transmitted communication . . . received or transmitted by cellular telephone," to commit the same types of harassment. The

___

[5] Gray noted that such payments could also be made from "a desktop computer" but that using this method would have resulted in an entry listing an "online" payment instead of a "mobile" one. Gray's testimony that such payments could be made from *either* a desktop computer *or* a mobile electronic device further supports the conclusion that during the time of the transaction at issue, the mobile phone on which the appellant had installed Capital One's specialized software or app was in fact functioning as a computer within the definition set out in the statute.

appellant therefore argues that the Act's definition of "computer" (which defines that term for purposes of both the Act's harassment statute and its fraud statute, the statute under which he was convicted) is more traditional and excludes not only acts of harassment committed with a cellular telephone but also fraud perpetrated by cell phone.

In this case, however, we do not compare related but different statutes to determine legislative intent. Where "[t]he legislature [has] defined the challenged term within the statut[ory scheme] itself using clear, unambiguous language[,] . . . no additional statutory construction is required." White v. Commonwealth, 68 Va. App. 242, 248-49 (2017). Here, the legislature clearly defined the meaning of "computer" in Code § 18.2-152.2 for purposes of the Act. Accordingly, this Court need not look outside the plain language of the definition in that code section to determine legislative intent. See Jones v. Commonwealth, 296 Va. 412, 416 (2018) (observing that "the existence of" an "overlap[ping]" "but not identical statute does not alter [an appellate court's] obligation to construe the applicable statute according to its plain language").[6]

In short, the plain language of Code § 18.2-152.2 supports the conclusion that the appellant's iPhone, a cellular smart phone, fell within the statutory definition of computer in

---

[6] We note that the definition in Code § 18.2-152.2 is *identical* to the definition in Code § 59.1-501.2. Compare Code § 18.2-152.2 (containing a definitional sentence and a list of exclusions), with Code § 59.1-501.2(a)(9) (containing an identical definitional sentence, preceded by the word "electronic," but not listing exclusions). See generally Code § 59.1-501.1 (noting that Code § 59.1-501.2 is a part of Virginia's "Uniform Computer Information Transactions Act"); Uniform Computer Information Transactions Act (UCITA), 7 (Pt. II) U.L.A. 199, 223, § 102 cmt. ¶ 7 (2002) (observing that UCITA's identical definition of "computer" does not include "traditional" household items like televisions simply because they contain microprocessors but that it "might include new generations of machines that combine" various computer functions with the ability to "receive[] telephone calls").

Code § 18.2-152.2.[7]  Consequently, the evidence was sufficient to prove that the appellant committed computer fraud.

### III.  CONCLUSION

We hold that the evidence supports the trial court's ruling that the appellant's iPhone was a computer for purposes of Code § 18.2-152.3 on the facts of this case and the evidence was sufficient to prove this element of the offense.  Consequently, we affirm the appellant's conviction.

<u>Affirmed.</u>

---

[7] By concluding that the appellant's iPhone was a "computer" within the meaning of Code § 18.2-152.3 while it was being used to transfer information and funds over the Internet, this Court does not hold that Internet access or usage is a prerequisite to classifying a digital or related device as a "computer" within the definition in Code § 18.2-152.2.  Cf. <u>United States v. Kramer</u>, 631 F.3d 900, 902-03 (8th Cir. 2011) (under a federal computer fraud statute, which defines the term "computer" differently than Virginia's Act but provides similar exclusions, holding that the defendant's act of sending text messages from a cell phone constituted the use of a computer and that a device need not necessarily have an Internet connection to be a "computer" under the statute), <u>cited with approval in</u> <u>United States v. Hill</u>, 783 F.3d 842, 845 n.4 (11th Cir. 2015) (*per curiam*).  We conclude only that the fact that the appellant used his phone to access the Internet to transfer funds was a relevant consideration in our determination under the totality of the circumstances that his smart phone met the definition of a computer.